**In re Emma Sue ADAMS, SS#: 242–60–4593, Debtor.**

**Bankruptcy No. 87–01067–SO5.**

United States Bankruptcy Court, E.D. North Carolina.

June 14, 1988.

Donald A. Davis, Raleigh, N.C., for debtor.

William O. White, Jr., Raleigh, N.C., for Neill McK. Ross.

Earle R. Purser, Raleigh, N.C., for George Hodges.

Joel S. Jenkins, Fayetteville, N.C., for G.H. Croft.

Trawick H. Stubbs, Jr., New Bern, N.C., for trustee.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the "Motion to Set Aside Sale and For Damages and Sanctions for Violation of the Automatic Stay," filed on November 19, 1987, by the chapter 13 debtor, Emma Sue Adams. The debtor seeks to set aside a postpetition conveyance of real property made pursuant to a prepetition foreclosure sale. The debtor also requests damages from the holder of the foreclosed deed of trust, the foreclosing trustee, and the purchaser at the foreclosure sale for violations of the automatic stay in connection with that conveyance. After proper notice, a hearing was held in Raleigh, North Carolina, on May 24, 1988.

### FACTS

Emma Sue Adams filed a *pro se* petition under chapter 13 of the Bankruptcy Code on April 22, 1987. At the time of the filing, the debtor owned a 24 acre tract of land fronting on Interstate 95 in Harnett County, North Carolina, having a value of $75,-000.[1]

George Hodges is the holder of a second deed of trust on the real property securing a debt of approximately $12,800, and prior

---

1. At the hearing, Mr. Croft's expert testified that the property had a value of $23,750. Ms. Adams' expert testified that the property had a value of $75,000. The $23,750 value is based on a valuation as farm land while the $75,000 value is based on the property's highest and best use— commercial and light industrial. The court finds the $75,000 value to be more accurate. The $75,000 value is supported by a recent county tax assessment value of $73,500 and a sale of 9 acres of the property which the debtor has arranged for $40,000.

encumbrances include a $3,000 first deed of trust, a judgment lien of $2,500, and a county tax lien of $2,500.[2]

Prior to her bankruptcy, Ms. Adams defaulted under the Hodges deed of trust and a foreclosure sale was held by the deed of trust trustee, Neill McK. Ross, on April 13, 1987. G.H. Croft was the purchaser at the foreclosure sale for $17,500, and the trustee, Mr. Ross, filed a report of sale with the Clerk of Court for Harnett County immediately after the sale on April 13. The effect of filing the report was to commence the ten day "upset" period during which upset bids may be submitted pursuant to N.C. GEN.STAT. § 45–21.27 and during which time the debtor could exercise her right of redemption. On April 22, 1987, before the ten day period had expired, the debtor filed her *pro se* petition under chapter 13 of the Bankruptcy Code.

The debtor's son, Tracy Adams, testified that on April 22 he telephoned Mr. Ross, the substitute trustee on the deed of trust and Mr. Hodges' attorney, informed him that the bankruptcy petition had been filed, and gave him the bankruptcy case number. Mr. Ross remembers the call from Mr. Adams, but does not recall being given the bankruptcy case number. Mr. Ross does remember that Mr. Adams said that his mother was filing for bankruptcy. The court accepts Mr. Adams' testimony as being credible and finds that Mr. Ross had actual knowledge of the debtor's bankruptcy on April 22, 1987. Notwithstanding that knowledge, on April 24, 1987, Mr. Ross filed a trustee's deed in Harnett County transferring the property to G.H. Croft. An order confirming the foreclosure sale was also filed in Harnett County on that same day.[3]

On June 24, 1987, Mr. Hodges and Mr. Ross[4] filed a motion asking this court to lift the stay and give retroactive approval of the transfer of property to G.H. Croft through the foreclosure sale. In a memorandum opinion and order entered September 4, 1987, the court found, based on Mr. Adams' testimony at a hearing held on July 27, 1987, that Mr. Ross knew that the debtor had filed her bankruptcy petition at the time he filed the trustee's deed transferring the property to G.H. Croft on April 24, 1987. Because the filing of the trustee's deed and the order confirming the foreclosure sale interfered with the debtor's ability to exercise her right of redemption, the court found that the filing of these documents was prohibited by the automatic stay. While the court refused to lift the stay at that time, its order of September 4, 1987, specifically reserved the question of whether the foreclosure conveyance to G.H. Croft could be set aside. Footnote 7 of the court's opinion stated:

> The general rule is that actions taken in violation of the automatic stay are deemed void and without effect. *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 816 (9th Cir.1985); *In re Baird*, 55 B.R. 316 (Bankr.W.D.Ky.1985). However, in *In re Ellis*, 40 B.R. 760 (Bankr. E.D.N.Y.1984), the court held that 11 U.S.C. § 549 created an exception to the general rule by preventing a foreclosure sale to a good faith purchaser from being set aside even though the sale took place after the debtor filed his bankruptcy petition and therefore was in violation of the automatic stay. This court will not determine the applicability of 11 U.S.C. § 549 without giving the purchaser in this case, G.H. Croft, an opportunity to be heard.

The debtor's motion now squarely presents the issue of whether the deed to Mr. Croft may be set aside and Mr. Croft

---

**2.** The amounts of the prior encumbrances are only approximations, but the exact amount of these liens is not necessary to determine the issues raised in this proceeding.

**3.** Orders confirming foreclosure sales are not required in North Carolina unless the sale is a resale necessitated by an upset bid. N.C.GEN. STAT. § 45–21.29A.

**4.** In North Carolina, an attorney may not represent the beneficiary of a deed of trust while acting as trustee. *See* Ethics Opinions of the Council of the North Carolina State Bar, CPR # 305 (October 14, 1981), CPR # 220 (April 13, 1979), CPR # 201 (October 19, 1978), CPR # 166 (July 14, 1978), CPR # 94 (October 21, 1976). Mr. Hodges has since retained separate counsel.

has been properly noticed.[5] Although 11 U.S.C. § 549(a) authorizes a trustee in bankruptcy (or a chapter 13 debtor) to avoid a postpetition transfer effectuated in violation of the automatic stay, 11 U.S.C. § 549(c) creates an exception to this general rule by prohibiting avoidance of a transfer of real property to a good faith purchaser without knowledge of the commencement of the bankruptcy case and for present fair equivalent value. *See In re Ellis,* 40 B.R. 760, 762 (Bankr.E.D.N.Y. 1984). Mr. Croft contends that he is a good faith purchaser without knowledge purchasing for fair equivalent value. The court disagrees and finds that Mr. Croft was not a purchaser without knowledge of the bankruptcy and that the purchase was not for fair equivalent value.

The circumstances surrounding Mr. Croft's bid at the foreclosure sale are somewhat unusual. Mr. Croft had no contact with the trustee, Mr. Ross, and dealt exclusively with and through Mr. Hodges. According to Mr. Croft, Mr. Hodges was Croft's stepfather and close friend. In April of 1987, Mr. Hodges asked Mr. Croft if he would be interested in purchasing Ms. Adams' 24 acres at the foreclosure sale of Hodges' deed of trust. Mr. Croft agreed that Mr. Hodges could bid at the sale on his behalf up to the amount secured by the deed of trust. Mr. Croft gave Mr. Hodges a cash deposit which Mr. Hodges gave to the trustee, Mr. Ross, with instructions that Mr. Croft was entering a bid equal to the amount owed under the deed of trust. Mr. Ross's report of sale showed the cash deposit and Mr. Croft's high bid of $17,500. Subsequently, with knowledge of the debtor's bankruptcy, Mr. Ross executed a deed in favor of Mr. Croft.[6]

■ There is no doubt that throughout the entire time of the foreclosure sale Mr. Ross was acting as trustee *and* as attorney for Mr. Hodges. Consequently, Mr. Ross's knowledge of the debtor's bankruptcy must be imputed to Mr. Hodges. The knowledge of Mr. Hodges, in turn, must be attributed to Mr. Croft, who had no contact with the trustee, except through Hodges. At the time of Mr. Croft's bid, the bankruptcy had not been filed, but Mr. Croft through Mr. Hodges, and Mr. Hodges through Mr. Ross, had knowledge of the bankruptcy before the sale was consummated.

■ The court also finds that Mr. Croft was not a purchaser for "present fair equivalent value" within the meaning of 11 U.S.C. § 549(c) since Mr. Croft's bid of $17,500 plus the amount of the outstanding liens on the property do not come close to the $75,000 value of the 24 acres.

## DISCUSSION AND CONCLUSIONS

Mr. Croft does not qualify as a *bona fide* purchaser without knowledge of the debtor's bankruptcy and therefore cannot rely on 11 U.S.C. § 549(c) to prevent the deed from being set aside. The bankruptcy petition was filed after the foreclosure sale, but before the running of the ten day period for filing upset bids to the high bid at the foreclosure sale. This court has previously held that the filing of a bankruptcy petition during the upset bid period stays the filing of upset bids and therefore indirectly extends the time within which the property may be redeemed by the debtor. *In re DiCello,* 80 B.R. 769 (Bankr.E.D.N.C. 1987).

■ In the present case, the trustee, Mr. Ross, frustrated the debtor's redemption rights by conveying the property in violation of the automatic stay. Now that the deed has been set aside, the debtor may pursue her redemption rights. Bankruptcy Code § 108(b)(2) has the effect of extending the redemption time to sixty days after the order for relief. The debtor in this case has been deprived of that sixty day extension because of the postpetition trans-

---

5. It could be argued that an action such as this to set aside a transfer should be an adversary proceeding. No party raised this issue and the court does not believe any party has been prejudiced by the fact that all of the formalities of an adversary proceeding were not followed.

6. The balance of the purchase price was never paid by Mr. Croft in cash. Instead, Mr. Croft satisfied the balance of the purchase price by forgiving an obligation Mr. Croft was owed by Mr. Hodges.

fer by Mr. Ross, and now that that obstacle has been removed, the sixty day extension should commence. Accordingly, the debtor shall have sixty (60) days from the date of entry of this order within which to exercise her right of redemption under North Carolina state law.[7]

The debtor's motion to set aside the deed to Mr. Croft also sought to recover damages from Mr. Ross, Mr. Hodges, and Mr. Croft, for a knowing and willful violation of the automatic stay, but the debtor indicated that she did not wish to pursue those damages if she were given the opportunity to redeem the property. Therefore, no damages for a violation of the automatic stay will be awarded.

A separate order setting aside the deed shall be entered.

SO ORDERED.

7. The debtor has arranged for the sale of 9 acres of the property at a price which will pay all encumbrances as well as all other creditors in full. The debtor has not proposed to modify the rights of holders of secured claims pursuant to 11 U.S.C. § 1322(b)(2), but only seeks to exercise her right of redemption under state law. The court therefore need not decide whether a chapter 13 plan may modify the rights of a secured creditor after a foreclosure sale of the creditor's collateral has been held. Although this court held in *In re DiCello*, 80 B.R. 769 (Bankr.E.D.N.C.1987), that, after a foreclosure sale has been held, a chapter 13 debtor has no right to cure a default on a deed of trust and then reinstate its original terms pursuant to 11 U.S.C. § 1322(b)(5), the question of the effect of a prepetition foreclosure sale on a debtor's rights under § 1322(b)(2) was not presented or addressed in *DiCello*.