In re John Jeffrey PETERS, Debtor.

John Jeffrey PETERS, Appellant,

v.

MASON–McDUFFIE MORTGAGE CORP., Appellee.

BAP No. NV–94–2159–HMeAs.

Bankruptcy No. 92–31904.

Adv. No. 94–28.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 22, 1995.

Decided July 7, 1995.

---

Geoffrey L. Giles, Reno, NV, for appellant.

Matthew Q. Callister, Las Vegas, NV, Michael S. Polk, Tarzana, CA, for appellee.

Before HAGAN, MEYERS and ASHLAND, Bankruptcy Judges.

## *AMENDED OPINION*

HAGAN, Bankruptcy Judge:

Mason–McDuffie Mortgage Corporation ("Mason") is the assignee of a security interest in a house owned by John Jeffrey Peters ("debtor"), a chapter 13 debtor. The debtor filed his chapter 13 petition immediately prior to the nonjudicial foreclosure sale of the house by Mason's predecessor-in-interest. It was later discovered that Mason had been continuing the date of the foreclosure sale after the plan was confirmed. The debtor contended Mason's actions violated the section 362 automatic stay, and sought attorneys' fees. The bankruptcy court denied the motion, and the debtor appeals. We conclude Mason's actions violated the section 362 automatic stay, and REVERSE and REMAND.

### FACTS

Mason, as successor-in-interest to Weyerhauser Mortgage Company, holds a note se-

cured by a first deed of trust against the debtor's home.[1] Prior to the debtor's bankruptcy filing, Mason took all actions necessary to conduct a nonjudicial foreclosure sale. The sale was scheduled for November 4, 1992. On November 3, 1992, the debtor filed his petition under chapter 13 of Title 11, United States Code. As of the petition date, the debtor at the time was $10,696.32 in arrears on the note.

On April 5, 1993, the bankruptcy court confirmed the debtor's chapter 13 plan. The plan provided Mason would retain its lien, and the debtor would cure any arrearages through the plan. The plan then states: "While in default at the time of filing for relief, this obligation shall be reinstated by virtue of this plan, and shall not be deemed a modification of this creditor's rights." Debtor's Excerpts of Record (hereinafter "Debtor's ER"), at 3. The plan additionally provides that all property revests in the debtor, and that the automatic stay remains in effect until discharge. The order confirming the plan similarly provides that the arrearage will be paid by the trustee, that all property revests in the debtor, and that the automatic stay remains in effect until a discharge is entered.

On July 29, 1994, Mason filed a motion for relief from stay, alleging the debtor had fallen several months behind on his payments. The motion stated that "[a] Foreclosure Sale of the Property is scheduled for August 10, 1994; however, said Foreclosure Sale will be postponed from time to time, pending authorization from this Court that such sale may take place." Debtor's ER, at 12.

The debtor opposed the motion, and (incorrectly) alleged Mason had filed a notice of default postpetition, in violation of the automatic stay. The debtor requested attorneys' fees and costs.

Two hearings were held on the matter: the first on August 22, 1994, the second on August 29, 1994. Debtor's counsel noted that he had misstated the facts in his motion papers; Mason had not filed a notice of default postpetition. Mason had, however, continued the foreclosure sale after the chapter 13 plan was confirmed. The debtor contended Mason's action in continuing the foreclosure sale, rather than letting the sale lapse, violated the automatic stay. Mason argued there was nothing improper about continuing the foreclosure sale postconfirmation.

The bankruptcy court concluded the stay had not been violated. The court entered an order granting Mason adequate protection in regard to its motion for relief from stay, and additionally finding Mason had not violated the automatic stay. The debtor filed a timely notice of appeal.

## ISSUE

The central issue in this case is whether Mason's action in continuing the foreclosure sale postconfirmation violated the automatic stay.

## STANDARD OF REVIEW

■ Whether a party's actions violated the automatic stay is an issue of law reviewed de novo. *See Wade v. State Bar of Arizona (In re Wade)*, 115 B.R. 222, 225 (9th Cir. BAP 1990), *aff'd*, 948 F.2d 1122 (9th Cir.1991).

## DISCUSSION

■ In Nevada, the timing of a sale under a deed of trust is governed by section 107.080 of the Nevada Revised Statutes. A sale may only take place after a breach of the obligation for which the trust deed is security. Nev.Rev.Stat.Ann. § 107.080(1) (Michie 1994). The beneficiary of the trust deed or the trustee must record a notice of the default, and then allow at least three months to elapse. Nev.Rev.Stat.Ann. § 107.080(2)(b), (c) (Michie 1994). After the three months has elapsed, the trustee must then give notice of the time and place of the sale. Nev. Rev.Stat.Ann. § 107.080(4) (Michie 1994). Mason estimated the total time involved in conducting a foreclosure sale is approximately four months.

---

1. The record is unclear at which point the mortgage was transferred to Mason. Because it makes no difference to this appeal whether an action was taken by Mason or by Weyerhauser Mortgage Company, all actions will be labeled as taken by Mason.

The debtor concedes Mason did not violate the automatic stay by continuing the foreclosure sale after the petition was filed but before the plan was confirmed. The debtor contends Mason violated the stay by either (1) continuing the foreclosure sale after all prepetition arrearages on the note had been cured, or (2) continuing the foreclosure sale postconfirmation.

Mason is correct in arguing that there is no evidence to support the contention that it continued the foreclosure sale after the debtor cured his prepetition arrearages. There is no evidence in the record regarding the dates the foreclosure sale was continued, and insufficient evidence regarding the date the prepetition arrearages were paid in full. There was thus no evidence to support the conclusion that Mason violated the automatic stay in this regard.

Mason does not deny that it continued the foreclosure sale after the plan was confirmed. The issue is therefore whether the postponement or continuation of a foreclosure sale postconfirmation is a violation of the automatic stay.

■ The confirmation of a chapter 13 plan specifically affects the relationship between a debtor and creditors. All creditors are bound by the terms of a confirmed chapter 13 plan. 11 U.S.C. § 1327(a).[2] The confirmation of the plan revests the debtor with all property of the estate, except as provided by the plan or the order confirming the plan. 11 U.S.C. § 1327(b). The revested property is taken free and clear of any claim or interest of any creditor provided for by the plan, except as otherwise provided by the plan or the order confirming the plan. 11 U.S.C. § 1327(c). There is a limitation on modifying the rights of holders of claims secured only by a security interest in the debtor's principal residence. 11 U.S.C. § 1322(b)(2). However, where the last payment on the debt is due after the end of the plan, a plan may provide for the curing of any defaults within a reasonable time and the maintenance of payments while the case is pending. 11 U.S.C. § 1322(b)(5).

■ "Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan." *Anaheim Sav. and Loan Ass'n v. Evans (In re Evans)*, 30 B.R. 530, 531 (9th Cir. BAP 1983). The panel has previously held that a secured creditor cannot obtain postconfirmation stay relief based on preconfirmation events or issues; the confirmed plan renders such matters res judicata, and only postconfirmation events, such as a default on the plan, will support postconfirmation stay relief. *See Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 434–35 (9th Cir. BAP 1985); *Evans*, 30 B.R. at 531–32.

■ When read in conjunction, section 1322(b)(5) (permitting a plan to provide for the curing of defaults) and section 1327(a) (making the terms of the plan binding upon creditors) demonstrate that a confirmed plan adds an additional level to the contractual relations between the debtor and secured creditor. The res judicata effect of the confirmed chapter 13 plan eliminated Mason's right to sell the property based on prepetition (and preconfirmation) defaults. It is not simply that Mason has no right to obtain relief from stay to foreclose based on prepetition defaults. The confirmed plan binds the debtor to pay the arrearages through the plan, and obligates Mason to accept those payments. After confirmation, the debtor is not in default unless and until he fails to make the required payments. The confirmation of a chapter 13 plan immediately acts to cure any defaults that are provided for under the plan. The terms of the cure are the payment of the arrearages, but the cure itself is effective immediately unless the plan otherwise provides.

Continued postponement of the foreclosure sale gives Mason an advantage to which it is not entitled: the right to immediately foreclose for a prepetition default. For a foreclosure sale to take place, Mason has to renotice the default and otherwise meet the requirements of Nevada law. *See* Nev.Rev. Stat.Ann. 107.080 (Michie 1994) (setting forth

2. Unless otherwise noted, all references to "section" are to the respective section of Title 11, United States Code.

notice requirements and time period for non-judicial foreclosure of deed of trust).

In its motion for rehearing, Mason disputes this characterization of the continued postponement of a foreclosure sale. Mason's argument is somewhat confusing, but appears to be that Mason can only obtain relief from stay for a postconfirmation default, and therefore it would be foreclosing for a post-confirmation default.

The nature of a continued postconfirmation foreclosure sale belies this contention. In order to foreclose a lien, a secured creditor must, upon default, meet certain notice requirements and time limits under Nev. Rev.Stat.Ann. § 107.080 (Michie 1994). Nevada law is quite clear that one cannot meet the notice requirements and time limitations prior to a default taking place; a "breach of the obligation" is a prerequisite to any attempt to foreclose. *See* Nev.Rev.Stat.Ann. § 107.080(1), (2) (Michie 1994). If Mason, upon obtaining relief from stay, may hold the continued foreclosure sale without meeting the time limitations and notice requirements, the basis for the foreclosure sale is the prepetition default. If the basis of the foreclosure sale were the postconfirmation defaults, the sale could not be held until Mason complied anew with the notice requirements and time limits of state law.

In other words, there is a distinction between an arrearage and a default. Usually the terms are coextensive: an arrearage is also a default, because the payment has not been made under the contract terms. Upon confirmation of a chapter 13 plan, however, the debtor's obligation to pay the arrearages is only on the terms contained within the plan. Where the payment of the arrearages is not immediately due upon confirmation, as here, the arrearages are no longer defaults, because the arrearages are no longer past due. There is no obligation for the debtor to pay the arrearages until such time as the confirmed chapter 13 plan requires the debtor to do so. The arrearages continue to exist, but because they are no longer past due they will no longer support a foreclosure sale.

Mason's attempt to regain its position in violation of the confirmed plan is a violation of the automatic stay. Mason bettered its position to collect a prepetition secured debt based on a cured prepetition default, and thus Mason's actions violated section 362(a)(1),[3] (a)(5),[4] and (a)(6).[5] Moreover, a fee could be incurred each time a foreclosure sale is postponed that is added to the debtor's outstanding obligations. A secured creditor has a right to adequate protection under section 362(d), but it does not have the right to obtain such protection at the debtor's expense without relief from the automatic stay.

Mason cites *First Nat'l Bank v. Roach (In re Roach)*, 660 F.2d 1316 (9th Cir.1981), in support of its argument that postponing a foreclosure sale does not violate the automatic stay. In *Roach*, the secured creditor had scheduled a foreclosure sale. The debtor filed a petition under chapter 11 on the day scheduled for the sale. The creditor published a notice of postponement of the sale, and moved for relief from stay. Relief from stay was granted, and the property was foreclosed. The day after the sale, the debtor moved to set aside the sale on the ground the creditor's successive notices of postponement of sale violated the automatic stay. The Ninth Circuit Court of Appeals held:

> Postponement notices which specify a new sale date do not violate 11 U.S.C. § 362.

The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions. Notes of Committee on the Judiciary, Sen.

---

**3.** Forbidding the "continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

**4.** Forbidding "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(5).

**5.** Forbidding "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 5840. The automatic stay also prevents piecemeal diminution of the debtor's estate. *See Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1167 (2d Cir.1979). The automatic stay does not necessarily prevent all activity outside the bankruptcy forum. *See David v. Hooker, Ltd.,* 560 F.2d 412, 417–18 (9th Cir.1977) (automatic stay under old bankruptcy act did not prevent trial judge in a separate case from requiring the debtor to comply with a discovery order issued prior to the filing of the insolvency petition).

Here, the Bank merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision. *See In re Decker,* 465 F.2d 294, 297 (3d Cir.1972) (stay provisions of old act were designed to maintain status quo).

660 F.2d at 1318–19 (alteration in original).

*Roach* is distinguishable. The confirmation of a chapter 13 plan brings into play statutes and policy considerations that do not exist prior to plan confirmation, whether under chapter 11, chapter 13, or otherwise. Mason's continued postponement of the foreclosure sale postconfirmation gained it the advantage of being able to foreclose immediately for a cured default, and interfered with the revesting of the property with the debtor, all in violation of section 1327 and the confirmed plan.

Mason contends a plan that "unwinds" its right to a foreclosure sale is an impermissible modification of its lien, in violation of section 1322(b)(2) and *Nobelman v. American Sav. Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). *Nobelman* is inapposite; it addresses the relationship between section 1322(b)(2), prohibiting the modification of a lien secured only by the debtor's principal residence, and 506(a), permitting the bifurcation of a lien into secured and unsecured portions. In fact, *Nobelman* specifically recognized that section 1322(b)(5) by its express terms permits a plan to cure defaults and maintain payments under the plan, section 1322(b)(2) notwithstanding. —— U.S. at ——, 113 S.Ct. at 2110. "[C]ourts have uniformly held that 11 U.S.C. § 1322(b)(2) (1984 Supp.) allows the debtor to 'cure' (i.e., pay or bring current) arrearages on the debt and thereby reinstate the debt." *Downey Sav. and Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987).

Section 362 provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A violation of the stay is willful where the creditor knew of the automatic stay, and intentionally performed the actions that violated the stay; a good faith belief the creditor had a right to the property is not relevant, nor is good faith reliance on the advice of counsel. *Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 482–83 (9th Cir.1989). Mason intentionally continued the foreclosure sale postconfirmation with knowledge of the automatic stay, and therefore the stay violation was willful.

Once a bankruptcy court determines that the violation of the stay is willful, an award of damages to the injured individual is mandatory. *See, e.g., Johnston Environmental Corp. v. Knight (In re Goodman),* 991 F.2d 613, 620 (9th Cir.1993) (discussing difference between civil contempt sanctions and an award of damages under section 362(h)). The debtor claims damages in the form of charges made against him by Mason for the continuance of the sale. We thus remand this case to the bankruptcy court for a determination of damages and an award of attorneys' fees.

## CONCLUSION

For the foregoing reasons, the "Order re: Adequate Protection" is REVERSED insofar as it held Mason did not violate the automatic stay, and REMANDED to the bankruptcy court for a determination of damages.