In re Judith A. WILLMAN, Debtor.

Judith A. WILLMAN and Edith Folkerth, Plaintiffs,

v.

Gerald A. POLLARD and Jacqueline M. Pollard, as Co–Trustees of Quality Produce Shippers, Inc. Profit Sharing Savings Plan and Trust; Roy H. Peterson and Huguette Peterson, husband and wife; Fidelity National Title Insurance Company, an Arizona corporation, Order Modifying, Defendants.

Bankruptcy No. 93–01939–PHX–CGC. Adv. No. 95–474.

United States Bankruptcy Court, D. Arizona.

Feb. 15, 1996.

Kent A. Lang, Scottsdale, Arizona, for Plaintiff, Edith Folkerth.

Michael Hickman, Hickman & Martens, P.L.V., Chandler, Arizona, for Plaintiff, Judith Willman.

Lawrence Hirsch, Hirsch Law Office, P.C., Phoenix, Arizona, for Defendants, Peterson.

S. Matt Collins, Crosby & Gladner, P.C., Phoenix, Arizona, for Defendants Pollard.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

CHARLES G. CASE, II, Bankruptcy Judge.

### I. INTRODUCTION

This adversary proceeding has been brought by the Plaintiffs, Judith A. Willman ("Debtor") and Edith Folkerth ("Folkerth"), to set aside a trustee's sale conducted by Fidelity National Title Insurance Company ("Fidelity") to foreclose upon a lien in favor of Roy H. Peterson and Huguette Peterson ("Petersons") at which the Debtor's property was purchased by Gerald A. Pollard and Jacqueline M. Pollard, as Co–Trustees of Quality Produce Shippers, Inc. Profit Sharing Savings Plan and Trust ("Pollards"). Both Plaintiffs and Defendants have moved for summary judgment and agree that there are no material facts in issue and that the case can be decided as a matter of law. For the reasons stated herein, the Plaintiffs' motion is granted and the Defendants' motion is denied.

### II. FACTS

Debtor and Folkerth purchased a residence located at 15466 North 32nd Avenue in Phoenix, Arizona (the "Property") from the Petersons on or about June 21, 1991. As part of the consideration for the sale, the Debtor and Folkerth executed a promissory note payable to the Petersons secured by the Property. On March 1, 1993, the Debtor filed a voluntary petition under Chapter 13. Prior to the filing of the Chapter 13 petition,

the Petersons had instituted a trustee's sale to foreclose on the property. The sale was originally scheduled for March 3, 1993. The sale was thereafter continued 17 times.

The Debtor filed a Chapter 13 Plan which was confirmed on May 23, 1994. Under the plan, the Debtor was required to make regular monthly mortgage payments outside the plan to the Petersons through Fidelity. In addition, the Debtor was required to pay to the Chapter 13 trustee the sum of $236.00 per month for months 1 through 20 of the plan and $260.00 for months 21–60.

Twelve of the continuances of the trustee's sale occurred post-petition but pre-plan confirmation. However, beginning with the continuance on June 16, 1994, and thereafter on July 21, 1994, September 9, 1994, November 10, 1994 and January 13, 1995, the sale was continued an additional 5 times after confirmation of the Debtor's Chapter 13 plan. Towards the end of 1994, the Debtor fell in default under the plan. On December 13, 1994, an order was issued requiring the Debtor to pay $416.00 to the trustee by December 28, 1994 or the Chapter 13 case would be dismissed. The Debtor did not meet this deadline and an order dismissing the case was entered on January 17, 1995. Thereafter, on February 17, 1995, Fidelity conducted the trustee's sale (which had been scheduled to that date on January 13, 1995) and the Property was purchased by Pollards. Proceeding under their trustee's deed, Pollards initiated a forcible entry and detainer action against the Debtor and Folkerth on March 2, 1995 and on March 6, 1995, pursuant to motion filed by the Debtor and after cure of the delinquent payments due to the trustee, an order was entered reinstating the bankruptcy case.

Therefore, in sum, this case involves the purchase by a third party of Debtor's property at a trustee's sale that occurred after the case had been dismissed and prior to being reinstated where the date of the sale had been determined based upon post-confirmation continuances. Plaintiffs argue that the sale should be set aside because the post-confirmation continuances violated the automatic stay, citing *In re Peters,* 184 B.R. 799 (9th Cir. BAP 1995). As such, the continuances were void, *In re Schwartz,* 954 F.2d 569 (9th Cir.1992), thereby rendering the sale void. The Defendants argue that *Peters* is inapplicable, first because it was decided after the sale took place and, second, because the subsequent dismissal of the bankruptcy in effect vacated the confirmation order and returned the parties to the status quo ante, thereby validating the trustee's sale.

## III. DISCUSSION

This case requires the rationalization of existing Ninth Circuit precedent as well as the reconciliation of sections of the Bankruptcy Code.

It is well established in this circuit that a creditor may continue a trustee's sale post-petition where all preliminary steps, other than the sale itself, have taken place. *See, In re Roach,* 660 F.2d 1316 (9th Cir. 1981). The rationale of *Roach* is that the continuances maintain the status quo and do not affect the parties' substantive rights. *Roach,* however, does not deal with a circumstance where confirmation of a Chapter 13 plan has occurred. Under Chapter 13, the automatic stay remains in place notwithstanding confirmation of the plan. Upon confirmation of the plan, property of the estate revests in the debtor, unless otherwise provided in the plan or the confirmation order. 11 U.S.C. § 1327(b). Section 362(c) provides that the stay of any act against property of the debtor (unless otherwise lifted or modified) continues until the earliest of the time the case is closed, dismissed or a discharge is granted. Under Chapter 13, a debtor is not entitled to a discharge until payments under the plan are satisfactorily completed. 11 U.S.C. § 1328(a). Therefore, in this case, the automatic stay remained in place from the date of filing until January 17, 1995, the date of dismissal. Thus, the trustee's sale itself clearly did not violate the automatic stay since the case was not reinstated until March 6, 1995. However, if any act taken in furtherance of the sale was void as violative of the automatic stay, then the sale itself would be invalid under state law because there would not exist an unbroken chain of valid continuances. *See,* A.R.S. § 33–810(B).

In *Peters*, a debtor moved for sanctions under Section 362(h) when he discovered that his home mortgage lender had been continuing a pending trustee's sale post-confirmation of his Chapter 13 plan. *In re Peters*, 184 B.R. 799 (9th Cir. BAP 1995). The Bankruptcy Appellate Panel ("Panel") found that the confirmation of the plan cured the pre-petition defaults, thereby removing the basis for proceeding on the pre-petition trustee's sale.[1] As a result, the *Peters* court held that the post-confirmation continuance of a now cured pre-petition debt violated Section 362(a)(1), (a)(5) and (a)(6).

*In re Schwartz*, 954 F.2d 569 (9th Cir.1992) squarely holds that acts taken in violation of the automatic stay are void, not voidable. Significantly, the facts in *Schwartz* involved post-petition acts by the Internal Revenue Service ("IRS") in a dismissed Chapter 11 case; *Schwartz* found that in a subsequently filed Chapter 13 case, the assessments made by the IRS were void as having violated the dismissed Chapter 11's automatic stay.

■ The Defendants' argument is twofold. First, they argue that *Peters* was "new law" and should not affect an already completed trustee's sale to a bona fide third party purchaser. This argument is without merit. As cited in *Peters* itself, previous Panel decisions in *Evans* and *Ellis* clearly hold that the effect of a confirmed plan is to remove a creditors' ability to rely on pre-petition defaults for post-confirmation exercise of remedies. *Peters* is neither a change in the law nor a radical departure from previous law; rather, it is the next logical step from existing precedent.

■ Second, Defendants rely upon Section 349 and numerous cases interpreting it. The gist of the Defendants' argument is that the effect of a dismissal under Section 349 is to return the parties, as much as practicable, to their respective rights prior to the bankruptcy—in effect, to create a fiction that the bankruptcy had never occurred. Defen-

dants' primary support is *In re Nash*, 765 F.2d 1410 (9th Cir.1985). In *Nash*, the debtors argued that payments made by a trustee to a creditor after dismissal were improper and should be returned to them. The court found that the dismissal "effectively vacated" confirmation of the Chapter 13 plan and that therefore the trustee should not have continued to make distributions. This is a logical result; without the benefit of a confirmed plan, the trustee loses authority to make distributions. Nothing in the case, however, suggests that acts taken in violation of the automatic stay which would have been void at the time are somehow reborn and validated by virtue of the dismissal. Indeed, when the Ninth Circuit decided *Schwartz*, *Nash* was part of its jurisprudence. Clearly, the *Schwartz* court did not feel constrained to validate prior violations of the automatic stay because of *Nash* and, indeed, did not even feel the need to discuss or distinguish the impact of *Nash*.

The other cases cited by Defendants were also inapposite. The primary case, *In re Whitmore*, 154 B.R. 314 (Bankr.D.Nev.1993), deals with whether or not the IRS may assert a claim in a second Chapter 13 case for interest and penalties accrued during a dismissed previous Chapter 13 case. Relying on Section 349(b), the court stated:

> If the effect of the dismissal of a case is to completely "undo" a case and to restore all parties to their pre-bankruptcy positions regardless of all interim activities undertaken and orders and judgments entered by the bankruptcy court, surely the IRS must be returned to its pre-bankruptcy position as well, including being permitted to go back and calculate interest and penalties on former "pre-petition" debts.

154 B.R. at 316. This holding is not inconsistent with granting relief to the Plaintiffs in this case. There is a substantial difference between allowing a creditor to "go back" and recalculate interest that accrued while a Chapter 13 was previously pending for purposes of asserting a claim in a second Chap-

---

1. The Panel cited *In re Evans*, 30 B.R. 530, 531 (9th Cir. BAP 1983) as follows: "Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan." *Id.* at 802. The Panel further noted: "The Panel has previously held that a secured creditor cannot obtain postconfir-

mation stay relief based on preconfirmation events or issues; the confirmed plan renders such matters res judicata, and only postconfirmation events, such as a default on the plan, will support postconfirmation stay relief. *See, Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 434–35 (9th Cir. BAP 1985)...." *Id.*

ter 13 and validating an otherwise "void" act taken in violation of the automatic stay. The other cases relied upon by the Defendants are similarly distinguishable. *See, e.g., In re Groves,* 27 B.R. 866 (Bankr.D.Kansas 1983); *Lee v. Wolf,* 162 B.R. 98 (Bankr.D.N.J.1993).

The fundamental problem with the Defendants' case is that it runs afoul of the clear holding of *Schwartz* and the policies underpinning it. As stated by the *Schwartz* court:

> Like the court in [*In re*] *Garcia* [109 B.R. 335 (N.D.Ill.1989)], we will not reward those who violate the automatic stay. The Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay. Those taking post-petition collection actions have the burden of obtaining relief from the automatic stay. *See In re Williams,* 124 B.R. at 317–18.

954 F.2d at 572. A holding today in favor of the Defendants would cheapen the integrity of the automatic stay by allowing creditors to take a calculated risk that their violations would be cleansed by a subsequent dismissal. This the Court will not do.[2]

Therefore, **IT IS ORDERED** granting Plaintiffs' Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment. Plaintiffs are to prepare and serve upon Defendants a proposed form of judgment. The parties are encouraged to arrive at a stipulated form of judgment involving all parties to this dispute. The Defendants shall have 15 days from the date of service of the proposed form of judgment to file an objection thereto. In the absence of an objection, Plaintiffs may file a Certificate of No Objection and lodge the judgment for signature. In the event of an objection, objectors are to file with the Court a proposed Notice of Hearing.

**SO ORDERED.**

---

**2.** The Plaintiffs also argue that holding the trustee's sale without actual notice to them violates their constitutional due process rights notwithstanding compliance with applicable state law. *See, In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz. 1995), and *In re Tome,* 113 B.R. 626 (Bankr. C.D.Cal.1990). Because this case has been resolved on the bases stated herein, the Court does not reach this issue.