In re Randall and Patricia SHELDON.

In re BancBoston's Objection to Confirmation[1].

Bankruptcy No. 95–34508.

United States Bankruptcy Court, W.D. Washington.

April 4, 1996.

---

1. This decision was originally issued in letter form. The footnotes are added for publication.

Christopher J. Breunig for Federal Bar Newsletter.

Roy W. Kent, Yando & Kent, Tacoma, WA, for Debtors.

Robin P. Church, Shapiro & Kreisman, Seattle, WA, for Creditor BancBoston.

PHILIP H. BRANDT, Bankruptcy Judge.

BancBoston Mortgage Corporation objects to confirmation[2] on the ground that the Debtors' plan does not include "anti-*Peters*" language. The reference is to *In re Peters*, 184 B.R. 799 (9th Cir. BAP 1995), a Chapter 13 (of the Bankruptcy Code: 11 U.S.C.[3]) case in which the Ninth Circuit Bankruptcy Appellate Panel held a lender's postconfirmation continuances of its nonjudicial foreclosure sale violated the automatic stay, and stated that the prepetition defaults were cured on the confirmation of the debtors' plan.

While the BAP's effect of confirmation analysis may well be dicta, as the opinion seems to indicate the prepetition delinquencies had been paid, its conclusion has provoked numerous objections to confirmation such as this one. Additionally, *Peters* is on appeal to the Ninth Circuit.

I am aware of Judge Glover's conclusion that *Peters* is wrongly decided, and that anti-*Peters* language is unnecessary, but have not seen a transcript of his oral ruling in *In re Brooks*, No. 95–08776.[4] A written decision is, I understand, forthcoming.

Debtors' contention that the objection is moot is not well taken: although no foreclosure was pending at the time of their petition, they were delinquent on their obligation to BancBoston. If Sheldons default postconfirmation and relief from stay (rather than dismissal) is granted, the *Peters* effect of foreclosure analysis would limit the default which BancBoston could notice under RCW 61.24.030(6)[5] to the postconfirmation delinquency. That amount (plus accruing payments and costs) would be necessary to cure the default and stop the sale under state law. If *Peters* does not apply, BancBoston could notice the whole delinquency, increasing the probability that the foreclosure will be completed, and increasing Debtors' incentives to avoid postconfirmation default. Of course,

---

**2.** Of debtors' Chapter 13 plan. The objection is a core proceeding within this Court's jurisdiction. 28 U.S.C. §§ 157(b)(2)(L) and 1334; GR 7, Local Rules W.D.Wash.

**3.** Herein "Code". Absent contrary indication, all "Chapter" and "Section" references are to the Bankruptcy Code.

**4.** U.S. Bankruptcy Court, W.D. Washington. Thomas T. Glover is Chief Judge of this Court.

**5.** Chapter 61.24 of the Revised Code of Washington ("RCW") governs nonjudicial foreclosure of deeds of trust in Washington. RCW 61.24.040 requires the recording (and service on or transmission to the grantor or successor in interest and lienholders) of a notice of sale not less than 90 days prior to sale.

RCW 61.24.030(6) requires the transmission or service of written notice of default by the beneficiary or trustee to the grantor or successor in interest containing:

. . . .

(d) An itemized account of the amount or amounts in arrears if the default alleged is failure to make payments;

(e) An itemized account of all other specific charges, costs or fees that the grantor is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale;

(f) The total of subparagraphs (d) and (e) of this subsection, designated clearly and conspicuously as the amount necessary to reinstate the note and deed of trust before the recording of the notice of sale;

. . . .

BancBoston could foreclose judicially [6] to preclude cure and reinstatement, but that process is significantly more expensive and, taking into account the redemption period, slower.

■ The question here presented differs from those before the BAP in *Peters:* there it was the effect of confirmation and of the stay; here, it is what the plan (or confirmation order) should say.

■ Under §§ 1321 and 1323 of the Code, only the debtors may file or propose modifications to a Chapter 13 plan preconfirmation. Thus, BancBoston cannot succeed on its objection to the plan's text, but it can object to confirmation, and thus the substance of its position is properly before the court. The fundamental question for resolution is: what effect should confirmation have on the lender's state law foreclosure rights? As the BAP noted in *Peters,* 184 B.R. at 802, § 1327 provides that the confirmation order may affect the answer.

■ Neither party points to any basis in the Code for inclusion or exclusion of the language requested by BancBoston in the plan, and neither directly addresses the confirmation order. I know of no reason why the text of the confirmation order is not within the discretion of the court, so long as it does not conflict with the Code, the rules, or controlling authority.

■ In exercising that discretion, I can properly consider the impact of various alternatives on judicial economy and the public, including other borrowers and lenders. A mechanical application of *Peters* would increase a lender's time to realization after a postconfirmation default when a nonjudicial foreclosure sale had been noticed prepetition, because of the unavailability of a continued or short-notice nonjudicial foreclosure sale under RCW 61.24.040(6) [7] or .130(4) [8]. Further, as noted above, the *Peters* analysis would reduce the state law cure amount. Taken together, these effects will tend to reduce and delay lenders' recoveries, effectively increasing their costs, and pushing them to scrutinize Chapter 13 plans more rigorously, which will also increase their costs. Lenders will compensate by marginally increasing interest rates and other charges (or denying credit) to borrowers such as the Sheldons, and by objecting on good faith and feasibility grounds more frequently in Chapter 13 cases.

To avoid these adverse impacts on borrowers, lenders, and judicial economy, and because the plan does not explicitly provide for BancBoston to retain its lien, which it must to comply with § 1325(a)(5)(B), BancBoston's objection is SUSTAINED. Its counsel shall propose language for the confirmation order.

6. Under RCW Chapter 61.12. RCW 61.24.100; *Helbling Bros. Inc. v. Turner,* 14 Wash.App. 494, 542 P.2d 1257 (1975); *Washington Mutual v. U.S.,* 115 Wash.2d 52, 58, 793 P.2d 969, 800 P.2d 1124 (1990).

7. Which provides that the trustee may continue the sale for a period or periods not exceeding 120 days by public proclamation at the time and place noticed for the sale, or alternatively by renoticing and publishing notice of continuance as if it were an initial notice of sale.

8. Which provides:
(4) If a trustee's sale has been stayed as a result of the filing of a petition in federal bankruptcy court and, after the period for continuing sale as allowed by RCW 61.24.040(6), an order is entered in federal bankruptcy court granting relief from the stay or closing or dismissing the case, or discharging the debtor with the effect of removing the stay, the trustee may set a new sale date which shall not be less than forty-five days after the date of the bankruptcy court's order....
The trustee is required to give written notice and to publish it in the same fashion as an initial notice of sale.
Some lenders and counsel, as BancBoston's here, interpret this section as requiring the sale be continuing to the latest date available under RcW 61.24.040(6) before the republishing and renoticing of a new sale date is permitted. that may present other problems: Judge Klobucher, of the Eastern District of Washington, has held in *In re Fritz,* 188 B.R. 438 (Bankr.E.D.Wa.1995), that oral continuances which effectively require the debtor or an agent to attend to determine the new sale datet, violates the automatic stay of § 362. *Fritz* is on appeal.