**In re Thomas Patrick BARRY, Debtor.**

**Thomas Patrick BARRY, Appellant,**

**v.**

**BA PROPERTIES, INC., Appellee.**

**No. CV–95–7634–KMW.**

United States District Court,
C.D. California.

June 25, 1996.

Randolph Joyce, Simi Valley, CA, for appellant Thomas Patrick Barry.

Frank J. Coughlin, Cordova & Ruzicka, Newport Beach, CA, for appellee BA Properties.

## MEMORANDUM OF DECISION

WARDLAW, District Judge.

Appellant Thomas Patrick Barry filed a Chapter 13 bankruptcy petition, protecting his residence from foreclosure. The bankruptcy court dismissed his Chapter 13 case on an erroneous record and without actual notice to him. Following the dismissal, Appellee BA Properties, Inc. sold the residence in a foreclosure sale. When Barry learned of the dismissal, he prevailed upon the bankruptcy court to reopen his case. BA Properties then moved the bankruptcy court for an order that the automatic stay that arose when it reopened the case did not attach to the residence and void the sale. It granted the motion. Barry appeals this decision. This Court **REVERSES** the bankruptcy court, holding that it erred by failing to find that equitable principles warranted voiding the sale and by failing to extend the automatic stay to the residence.

## I. BACKGROUND

### A. Facts and Procedural History

Bank of America loaned Barry and his wife $340,000 to purchase residential property located at 549 Citation Way ("the Property"). To secure this loan, it executed both a note with a face value of $340,000 and a deed of trust against the Property. It subsequently assigned the note and deed of trust to BA Properties.

Barry defaulted on the note. On June 9, 1992, BA Properties commenced the procedures for holding a nonjudicial foreclosure sale. It scheduled the sale for December 9, 1992.

On December 8, 1992, Barry filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code ("the Code"), precluding the sale. His plan of reorganization listed Bank of America as a creditor and stated that the amount of default on its note was $25,000. The plan also stated that Barry would cure the default by paying thirty-six installments of $694.44.

The bankruptcy court confirmed the plan on April 2, 1993. After this confirmation, BA Properties postponed the foreclosure sale several times.[1] Barry made payments under the plan to the Standing Trustee Nancy Curry and to BA Properties.

On February 10, 1994, she filed a motion to dismiss Barry's Chapter 13 case on the grounds that the plan failed to address a claim that the Internal Revenue Service made and because Barry failed to make timely payments under the plan. Specifically, she claimed that she had not received a payment from him since October 26, 1993. She mailed a notice of the motion to Barry at his Citation Way address. He failed to oppose the motion or to appear at oral argument. The bankruptcy court entered an order dismissing his case on March 16, 1994.

---

1. It postponed the sale on April 14, 1993, June 16, 1993, August 15, 1993, October 6, 1993, November 10, 1993, and February 9, 1994.

BA Properties continued to receive payments from Barry after the bankruptcy court dismissed his case. It stopped accepting these payments after the dismissal and attempted to return them to Barry at his Citation Way address. However, the post office returned the payments to BA Properties. On August 17, 1994, it held a foreclosure sale. It purchased the Property.

Barry filed a motion for relief from the order of dismissal on September 2, 1994. He argued that he had made timely payments to the Trustee but that she had not received them because she had moved to a new address. He also argued that he did not receive notice of the Trustee's motion to dismiss his case because he had changed the address where he received his business mail. He claimed that he did not learn about the dismissal until August 23, 1994. The bankruptcy court entered an order reopening Barry's Chapter 13 case on November 18, 1994.

BA Properties did not reverse the foreclosure sale. Instead, it filed a motion for relief from the automatic stay, arguing that it was the true owner of the Property, that Barry had no interest in the Property, and that the court should allow it to pursue its pending unlawful detainer proceeding. Barry opposed the motion, contending that postponement of a foreclosure sale after a bankruptcy court has confirmed a reorganization plan violates the automatic stay and invalidates the sale. He cited the case *In re Peters*, 184 B.R. 799 (9th Cir. BAP 1995) as support for his arguments. The bankruptcy court granted BA Properties' motion. It acknowledged that *Peters* seems to be controlling; however, it disagreed with the policy underlying the decision and refused to follow it until the Ninth Circuit affirms it. *See* Appellant's Excerpts of Record Ex. 25 at 7:21–8:12. On November 9, 1995, the bankruptcy court granted Barry's motion for a stay pending appeal.

## B. The Appeal

Barry appeals the bankruptcy court's ruling. He argues that (1) the sale violated the automatic stay and is void; (2) BA Properties failed to follow applicable notification procedures; (3) the bankruptcy court should have voided the sale on equitable grounds; and (4) BA Properties is not entitled to relief from the automatic stay.

The Court notes that it is not reviewing the denial of a motion for relief from the automatic stay. While BA Properties styled its motion before the bankruptcy court as a motion for relief from the automatic stay, it actually argued a motion for an order that the automatic stay did not attach to the Property. A motion for relief from a stay presupposes that a stay has attached; the creditor argues that the bankruptcy court should lift the stay because she lacks adequate protection or because the debtor has no equity in the property and does not need it for an effective reorganization. BA Properties made none of these arguments. Instead, it contended that the foreclosure sale had divested Barry of his interest in the Property, so the automatic stay did not attach to it when the bankruptcy court reopened his Chapter 13 case.

## II. JURISDICTION

This matter is an appeal from a final judgment of the United States Bankruptcy Court for the Central District of California. Thus, this Court has jurisdiction under section 158(a) of Title 28. *See* 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments [and] orders ... of bankruptcy judges...."). It sits as an appellate court.

## III. STANDARD OF REVIEW

This Court reviews a bankruptcy court's conclusions of law de novo. *Manufacturers Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848, 850 (9th Cir.1992). It reviews findings of fact under the clearly erroneous standard. *Id.* The parties agree that this appeal poses pure questions of law. Appellant's Brief at 2; Appellee's Brief at 6. Thus, this Court must review the bankruptcy court's decision under the de novo standard.

## IV. WHETHER FORECLOSURE SALE IS VOID

Barry argues that the foreclosure sale is void because (1) the post-confirmation post-

ponements violated the automatic stay; (2) BA Properties failed to follow applicable notification procedures; and (3) equitable principles warrant voiding the sale.

## A. Post-confirmation Postponement Does Not Violate Automatic Stay

■ The bankruptcy court did not err in refusing to apply *In re Peters*, a Ninth Circuit Bankruptcy Appellate Panel decision. Therefore, the Court affirms the bankruptcy court's holding that a post-confirmation postponement does not violate the automatic stay.

The Ninth Circuit has held that a creditor may postpone a foreclosure sale after a debtor files a bankruptcy petition without violating the automatic stay. *First Nat'l Bank of Anchorage v. Roach (In re Roach)*, 660 F.2d 1316, 1318 (9th Cir.1981). The rationale supporting this decision is that postponement maintains the *status quo* and does not affect the debtor's substantive rights. *Id.* at 1319. However, the *Roach* court did not address the situation where a postponement occurs after the bankruptcy court has confirmed a Chapter 13 reorganization plan.[2]

■ A Chapter 13 reorganization plan may alter the legal relationship of the debtor and creditor, so before applying *Roach*, which was decided in a pre-confirmation context, in the post-confirmation context, the Court must determine that the postponement merely continues to preserve the *status quo*. Under Chapter 13, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). "[S]ubsection 1327(a) bar[s] post-confirmation relief from [the] stay based on grounds arising before confirmation." *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 434 (9th Cir. BAP 1985). Therefore, a creditor must voice concerns, such as worries about adequate protection and the necessity

of certain assets for a successful reorganization, before the confirmation. Once confirmation occurs, the creditor may not raise any issue that it could have raised before confirmation. *Anaheim Sav. & · Loan Ass'n v. Evans (In re Evans)*, 30 B.R. 530, 531–32 (9th Cir. BAP 1983).

The Ninth Circuit Bankruptcy Appellate Panel has held that "[t]he confirmation of a chapter 13 plan immediately acts to cure any defaults that are provided for under the plan. The terms of the cure are the payment of the arrearages, but the cure itself is effective immediately unless the plan otherwise provides." *Peters v. Mason–McDuffie Mortgage Corp. (In re Peters)*, 184 B.R. 799, 802 (9th Cir. BAP 1995). From this holding it reasoned that under *Evans* and *Ellis*, "[t]he res judicata effect of the confirmed chapter 13 plan eliminate[s] [the creditor's] right to sell . . . property based on prepetition (and pre-confirmation) defaults." *Id.* at 802. In other words, by curing the default, the confirmation destroys the creditor's right to conduct a foreclosure sale because the default giving rise to the right no longer exists.[3] Under the *Peters* theory, continuing to postpone the foreclosure violates the automatic stay because the creditor is attempting to retain rights that the confirmation has destroyed; it is retaining the opportunity to seek post-confirmation relief from the stay based on grounds arising before confirmation. *Id.;* see also *Willman v. Pollard (In re Willman)*, 192 B.R. 207, 209–10 (Bankr.D.Ariz.1996) (applying *Peters* ). ·

■ The problem with this holding is that its basic premises conflict with the plain language of the Code and established Ninth Circuit law. Specifically, the theory that confirmation of a Chapter 13 plan immediately cures defaults is wrong. Section 1322(b)(5) of the Code states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . .

---

2. Several courts have applied *Roach* to post-confirmation postponements without recognizing that its holding is limited to the period after the bankruptcy filing and before the bankruptcy court has confirmed a reorganization plan. *See Lugo v. Saez (In re Jesus Saez)*, 721 F.2d 848, 853

(1st Cir.1983); *Tome v. Baer (In re Tome)*, 113 B.R. 626, 630 (Bankr.C.D.Cal.1990).

3. A new right to foreclose would arise only if the debtor fails to make payments under the reorganization plan.

secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). Language allowing a plan to provide for a cure of default "within a reasonable time" is not consistent with the holding that a cure occurs when the bankruptcy court confirms the plan. Indeed, courts interpreting section 1322 have stated that full payment of arrearages is the cure, implying that confirmation of the plan is not. *See Shearson Lehman Mortgage Corp. v. Laguna (In re Laguna),* 944 F.2d 542, 545 (9th Cir.1991), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1577, 118 L.Ed.2d 219 (1992) (holding that payment of pre-petition arrearages under a Chapter 13 reorganization plan "constituted a cure of default"); *Ellis,* 60 B.R. at 436 (stating that if a Chapter 13 debtor makes payments under her reorganization plan, eliminating an arrearage, "she cures the default on the deed of trust and avoids foreclosure").

Barry argues that section 1327 clarifies section 1322 and establishes that the confirmation is the cure. He asserts that language explaining the effect of a confirmation and stating that (a) "[t]he provisions of a confirmed plan bind the Debtor and each creditor," (b) "confirmation of a plan vests all of the property of the estate in the debtor," and (c) "the property vesting in the debtor is free and clear of any claim or interest of any creditor provided for by the plan" conclusively shows that the confirmation is the cure. 11 U.S.C. § 1327.

Barry is incorrect. The fact that the provisions of the plan bind Barry and BA Properties does not show that the confirmation is the cure. Furthermore, the fact that the debtor recovers its property from the bankruptcy estate does not show that confirmation is the cure.

Section 1327(c) is slightly more troublesome because it is poorly worded. However, it too fails to support the theory that confirmation is the cure. The gist of it is that a creditor must be satisfied with the claims and interests that the plan explicitly gives it. *See Lee Servicing Co. v. Wolf (In re Wolf),* 162 B.R. 98, 106 (Bankr.D.N.J.1993) ("If a creditor is 'provided for' in the Chapter 13 plan, upon confirmation the property of the estate will vest in the debtor free and clear of liens only to the extent not 'otherwise provided in the plan.'"). A debtor must create a plan within statutory constraints that govern its ability to limit creditor's claims and interests. Section 1322 sets forth rules about constructing a plan and explains what a plan may "provide for" and what it may not "provide for." Under section 1322, a debtor may cure a default by paying the arrearage, not by convincing a bankruptcy court to confirm its plan. Section 1327(c) merely acts as the enabling provision for section 1322. It precludes creditors from asserting rights that section 1322 and the debtor do not give them. But contrary to Barry's arguments, it does not give the debtor the right to create a plan that ignores the claims and interests of creditors that section 1322 explicitly gives to them.

Because confirmation of the reorganization plan does not effect a cure, the positions of the debtor and creditor are fundamentally the same pre- and post-confirmation. The debtor continues to be in default until it pays the arrearage. Thus, the *Roach* court's holding is applicable in the post-confirmation context because the postponements merely continue to maintain the *status quo.*

### B.  Failure to Notify Barry

■  Barry also contends that the sale is void because BA Properties did not give him proper notice of the sale. He cites *Tome v. Baer (In re Tome),* 113 B.R. 626 (Bankr. C.D.Cal.1990) to support his contention. However, *Tome* is inapposite in this case.

The *Tome* court held that when a bankruptcy court gives a creditor relief from the automatic stay, before conducting a foreclosure sale, the creditor must satisfy bankruptcy law notice requirements, which are more strict than the notice requirements set forth in the California statutes governing foreclosure sales. *Id.* at 636. It reasoned that "[t]he granting of relief from [the] stay does not terminate the [bankruptcy] estate's ownership interest in the property." *Id.* at 632.

In this case, BA Properties conducted the foreclosure sale after the bankruptcy court dismissed Barry's Chapter 13 case. The

bankruptcy estate lost its ownership interest in the property when the bankruptcy court dismissed Barry's case. Thus, the rationale underpinning *Tome* does not apply.[4] BA Properties merely had to comply with the California statutory notice requirements, and it did.

## C. Equitable Considerations

Barry also argues that equitable considerations make the sale void. In response, BA Properties asserts that Barry is raising this issue for the first time on appeal and may not do so. The record below shows that Barry mentioned these equitable considerations to the bankruptcy judge before he made his ruling. *See* Appellant's Excerpts of Record Ex. 25 at 6:25–7:9. However, he did not explicitly argue that the court should void the sale on equitable grounds. Instead, he argued that under *Peters* the sale was void. "As a general rule, an issue not presented to the trial court cannot be raised for the first time on appeal." *United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). The policy underlying this rule is that "[i]t would be unfair to surprise litigants on appeal by final decision of an issue on which they had no opportunity to introduce evidence." *Id.* There are several exceptions to this rule: (1) a new theory or issue arises while the appeal is pending; (2) an issue that the appellant conceded or neglected below is one of law and does not rely on the factual record established in the lower court; and (3) a plain error has occurred and injustice might result if the appellate court does not address it. *Id.* In this case, Barry mentioned the equitable grounds for reversing the sale to the bankruptcy judge. BA Properties had an opportunity to refute these grounds by introducing evidence. Additionally, this Court has given it the opportunity during oral argument and in a supplemental brief to argue these equitable issues. Furthermore, by ignoring equitable grounds for reversing the sale, the bankruptcy court committed a plain error. Injustice will result because Barry will lose his home as a result of the error. Thus, examining his equitable arguments on appeal is proper.

Barry asserts two equitable theories for voiding the sale.[5] The first theory focuses on the postponements. The second theory focuses on the sale, itself. Although his postponements theory must fail, he has articulated equitable grounds that warrant reversing the sale.

He first argues that *Roach* held that postponements do not violate the automatic stay if they merely maintain the *status quo* and do not allow the creditor to harass the debtor or to gain an advantage over him. *Roach,* 660 F.2d at 1319. He argues that BA Properties used the postponements to gain an advantage over him. However, as the Court has explained, the postponements in this case merely maintained the *status quo.* There is no evidence that BA Properties used the postponements to harass Barry or to gain an advantage over him. Thus, he has no basis in equity for attacking the postponements.

However, he has articulated bases in equity for reversing the sale. First, he complied with his obligation to pay the arrearage to BA Properties. It has never controverted his contentions that he made all of the post-confirmation payments that he owed it. He continued to make payments to it after the

---

4. *Tome* would not void the sale for the additional reason that "[i]t is not clear ... that the foreclosure sale may be set aside because of the insufficient notice." *Tome* 113 B.R. at 635. The *Tome* court set aside a foreclosure sale both because the creditor failed to give sufficient notice and because the notice of default that had been created pre-petition was inaccurate and the creditor who assigned its rights to the collateral that was foreclosed upon gave the debtor false and misleading information about the sale. *Id.*

Barry has adduced no evidence that either Bank of America or BA Properties gave him false or misleading information. Furthermore, he does not argue that the pre-petition notice of default was inaccurate.

5. He mentions a third theory in passing when he claims that accepting payments after the bankruptcy court dismissed Barry's case equitably estops BA Properties from accelerating collection of the secured debt by conducting the foreclosure sale. Appellant's Brief at 24. However, under California law, a creditor does not waive its right to accelerate by accepting a partial payment of the debt. *Hersch v. Citizens Sav. & Loan Ass'n,* 146 Cal.App.3d 1002, 1011–12, 194 Cal.Rptr. 628, 632 (1983); *Bisno v. Sax,* 175 Cal.App.2d 714, 346 P.2d 814 (1959).

bankruptcy court dismissed his case. Second, he had no notice of the sale or the dismissal, so he could not correct an inaccurate record and preserve his rights. Because Barry did not receive notice of the motion, he was unable to inform the bankruptcy court that he had been making timely payments. These arguments show that the bankruptcy court clearly erred in failing to reverse the sale.

■■■ Although this Court gave BA Properties the opportunity to controvert Barry's arguments that equitable principles warrant reversing the sale in its supplemental brief, it has not done so. Instead, it argues that a bankruptcy court cannot consider principles of equity when determining motions to lift an automatic stay. Appellee's Supp. Brief at 1. BA Properties is correct. *See Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir.1985) (holding that considerations of whether to lift an automatic stay are "limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective organization"). However, as the Court has explained, the bankruptcy court was not deciding whether to lift a stay. Instead, it was deciding whether the stay attached to the Property. Thus, it could properly consider equitable arguments.

## V. WHETHER BA PROPERTIES IS ENTITLED TO RELIEF FROM AUTOMATIC STAY

Although equitable grounds for reversing the sale exist, this Court could find that the bankruptcy court did not err in refusing to do so if BA Properties is entitled to relief from the automatic stay.

### A. Legal Standard Governing Lifting the Automatic Stay

The Code lists two situations in which a bankruptcy court *must* lift an automatic stay:

On the request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). Thus, a bankruptcy court must lift the stay if (1) the creditor lacks adequate protection or (2) the debtor does not have equity in the property and the property is not necessary to an effective reorganization.

### B. Application to this Case

The record in this case is devoid of facts on which this Court could make a finding that the bankruptcy court had to lift the automatic stay. It did not consider the issues of adequate protection, Barry's equity in the Property, and the necessity of the Property to an effective reorganization. Thus, this Court cannot affirm the bankruptcy court's decision not to reverse the bankruptcy sale on section 362(d) grounds.

## VI. CONCLUSION

This Court holds that the bankruptcy court erred in failing to find that equitable principles warranted reversing the foreclosure sale and extending the automatic stay to the Property. It remands this case for further proceedings consistent with this opinion.

IT IS SO ORDERED.