**In re Sharon L. FRITZ, Debtor.**

**Sharon L. FRITZ, Plaintiff,**

**v.**

**WASHINGTON MUTUAL, a federal savings bank, and Arthur R. Thompson and Darlene D. Thompson, husband and wife, Defendants.**

**Bankruptcy No. 94–02696–K1B.
Adv. No. A94–0210–K1B.**

United States Bankruptcy Court,
E.D. Washington.

Sept. 18, 1995.

**439**

Frank C. King and Bernard McNallen, Spokane, WA, for Plaintiff.

Laurin S. Schweet, Seattle, WA, Michael J. Paukert, Spokane, WA, for Defendants.

## MEMORANDUM OPINION

JOHN M. KLOBUCHER, Bankruptcy Judge.

### JURISDICTION

Jurisdiction of this court is proper pursuant to 28· U.S.C. § 1334(a), 28 U.S.C. § 157(a), (b)(1) and (2), and Local Rule 29 of the United States District Court for the Eastern District of Washington. This is a core proceeding pursuant to 28 U.S.C. § 157.

### ISSUE

The sole issue addressed in this opinion is whether or not the "public proclamation" process of continuing foreclosure sales during the pendency of a bankruptcy proceeding is violative of the automatic stay imposed by 11 U.S.C. § 362.

### FACTS

The defendant, Washington Mutual Savings Bank, was the beneficiary of a deed of trust upon the residence of the plaintiff, Sharon L. Fritz. Mrs. Fritz fell into arrears on the payment of her obligation, and Washington Mutual commenced non-judicial foreclosure proceedings. Mrs. Fritz filed for protection under Chapter 13 of the Bankruptcy Code. A representative of the trustee of the deed of trust, H & L Services, Inc., attended the sale as specified in the notice of foreclosure and, as provided by Washington statute, continued the sale to a future date by "public proclamation". No further notice of the continuance date was required by Washington law and no personal notice was given to the debtor. Neither Mrs. Fritz nor anyone else on her behalf attended the sale and consequently she was unaware of the continuance date. Shortly thereafter, and before the continued sale date had occurred, Mrs. Fritz's Chapter 13 proceeding was dismissed. The continued sale date occurred several days thereafter. The trustee appeared at the prescribed time and place and conducted a sale of the residence. The defendants, Arthur R. Thompson and Darlene D. Thompson, husband and wife, were the successful bidders at the sale at a price of $56,741.11, which was slightly above the amount of the encumbrance and substantially below the fair market value of the property. Mrs. Fritz was thereby deprived of a substantial equity in· her residence which would otherwise have been available to her as a homestead exemption.

### DISCUSSION

 It is not disputed by the plaintiff that the sale was conducted in accord with appli-

cable Washington statutes. Those statutes provide as follows:

RCW 61.24.130(4)

If a trustee's sale has been stayed as a result of the filing of a petition in federal bankruptcy court and, after the period for continuing sale as allowed by RCW 61.24.040(6), an order is entered in federal bankruptcy court granting relief from the stay or closing or dismissing the case, or discharging the debtor with the effect of removing the stay, the trustee may set a new sale date which shall not be less than forty-five days after the date of the bankruptcy court's order. The trustee shall:

(a) Comply with the requirements of RCW 61.24.040(1)(a) through (f) at least thirty days before the new sale date; and

(b) Cause a copy of the notice as provided in RCW 61.24.040(1)(f) to be published in a legal newspaper in each county in which the property or any part thereof is situated, once between the thirty-second and twenty-eighth day before the sale and once between the eleventh and seventh day before the sale.

RCW 61.24.040(6)

The trustee may for any cause the trustee deems advantageous, continue the sale for a period or periods not exceeding a total of one hundred twenty days by a public proclamation at the time and place fixed for sale in the notice of sale or, alternatively, by giving notice of the time and place of the postponed sale in the manner and to the persons specified in RCW 61.24.040(1)(b), (c), (d), and (e) and publishing a copy of such notice once in the newspaper(s) described in RCW 61.24.040(3), more than seven days before the date fixed for sale in the notice of sale. No other notice of the postponed sale need be given; ...

RCW 61.24.040(1)(b) through (f) provide that a detailed notice of the time and place of the proposed sale must be transmitted by first class and either certified or registered mail to the grantor and to various other parties who may have an interest in the property.

Outside of the bankruptcy context the application of the "public proclamation" process causes no particular problem. The foreclosure sale may be continued from time to time by the trustee but must be concluded within one hundred twenty days following the original sale date. Customarily there is no reason to continue the sale date unless a continuance is requested by the grantor. Any interested parties will attend the original proceeding and will be advised of the continuance date whether notice is given in writing or is merely announced by public proclamation. However, when a bankruptcy petition is filed before the sale date, interested parties know that the sale is stayed by 11 U.S.C. § 362 and they customarily do not attend.

RCW 61.24.130(4) was enacted in 1987. Prior to its enactment, if stay relief was not obtained within the one hundred twenty day window (which is typically the case) it was necessary for the beneficiary to re-initiate the entire foreclosure proceeding. The obvious purpose of the statute was to alleviate that burden. By the terms of the statute, even though the one hundred twenty day window has expired, the trustee may set a new sale date. However, that sale must be not less than forty-five days after the date of the bankruptcy court's order and written notice of the new sale date must be afforded to all interested parties. Thus the grantor has an opportunity to at least sell or refinance the property in order to preserve any equity. By a literal interpretation of the statute, however, it has no application if the one hundred twenty day window has not yet expired. If the grantor is a debtor in bankruptcy and the stay is lifted before the sale date as originally scheduled, no further notice need be given pursuant to State law. I do not find this offensive inasmuch as, although the debtor may have precious little time to seek other relief, at least the debtor is aware of the sale date as originally scheduled, having received written notice of it before the bankruptcy.

The real difficulty occurs when, as in the case at bar, the trustee has continued the sale date during the bankruptcy by public proclamation and stay relief has occurred

within the one hundred twenty day window. If the debtor does not attend the sale at the time and place originally scheduled, and at each continuation date thereafter, the debtor will be unaware of the ultimate sale date. Pursuant to Washington law these continuances by public proclamation may take place as often as once per week. Theoretically, as I read the statutes, the trustee could continue the sale date one week at a time and compel the debtor/grantor's attendance on a weekly basis for a period of up to nineteen consecutive weeks during the "breathing spell" afforded by the automatic stay.

The defendants rely upon *Matter of Roach,* 660 F.2d 1316 (9th Cir.1981) as authority for the proposition that a creditor's continuance of the sale date while the debtor is in bankruptcy does not violate the automatic stay imposed by 11 U.S.C. § 362. This Court is, of course, bound by that opinion.

The *Roach* opinion, however, was published during the early history of the Bankruptcy Code. The creditor in that case had commenced a non-judicial foreclosure on a residential subdivision development. The debtor filed under Chapter 11 on the date the property was scheduled for sale. The creditor published a notice of postponement of sale and filed for relief from the automatic stay. Relief from the automatic stay was granted at the preliminary hearing. On the day after the sale of the property the debtor moved for an order invalidating the sale on the grounds that the creditor had repeatedly violated the automatic stay by publishing notices of postponement. The Court's entire opinion on that issue reads as follows:

Postponement notices which specify a new sale date do not violate 11 U.S.C. § 362.

The purpose of the automatic stay is to give the debtor a breathing spell from the creditors, to stop all collection efforts, harassment and foreclosure actions. Notes of Committee on the Judiciary, Sen. Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 5840. The automatic stay also prevents piecemeal diminution of the debtor's estate. *See Bohack Crp. v. Borden, Inc.,* 599 F.2d 1160, 1167 (2d Cir.1979).

The automatic stay does not necessarily prevent all activity outside the bankruptcy forum. *See David v. Hooker, Ltd.,* 560 F.2d 412, 417–18 (9th Cir.1977) (automatic stay under old bankruptcy act did not prevent trial judge in a separate case from requiring the debtor to comply with a discovery order issued prior to the filing of the insolvency petition).

Here, the Bank merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision. *See In re Decker,* 465 F.2d 294, 297 (3d Cir.1972) (stay provisions of old act were designed to maintain status quo).

Affirmed.

The Ninth Circuit Court of Appeals has addressed the breadth of the automatic stay on numerous occasions since the *Roach* opinion and appears to have applied it quite seriously. In *Schwartz v. U.S.A.,* 954 F.2d 569 (9th Cir.1992) at 572 the Ninth Circuit stated as follows:

Before addressing the interplay between various Code sections, we must emphasize that the automatic stay plays a vital role in bankruptcy. It is designed to Protect debtors from all collection efforts while they attempt to regain their financial footing. As Congress stated:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy....

[T]he fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable....

*See also Stringer v. Huet,* 847 F.2d 549 (9th Cir.1988) and *Hillis v. Hawaii Automobile Dealers' Association,* 997 F.2d 581 (9th Cir.1993).

Although the *Roach* opinion has not been overruled and this Court is bound by its holding, I question whether the Ninth Circuit would expand its application beyond the factual circumstances dealt with therein.

Washington is not the only State which allows the trustee to continue a foreclosure sale by public proclamation, and other bankruptcy courts have addressed the impact of that procedure. In *In re Tome*, 113 B.R. 626 (Bkrtcy.C.D.Cal.1990) Judge Bufford faced a situation where the debtor was unaware of the ultimate sale date at the time relief from the automatic stay was granted to the beneficiary of the trust and, as a consequence, substantial equity in the property which would otherwise have been available for the estate or for the debtor by way of exemption was in jeopardy. Judge Bufford concluded that bankruptcy law, which preempts California foreclosure law pursuant to the supremacy clause of the United States Constitution, requires better notice for the sale of property belonging to a debtor's estate than was afforded by a public proclamation. Even though the automatic stay had been lifted, Judge Bufford reasoned that the property remained property of the estate and section 365 of the Bankruptcy Code dictated notice to interested parties before the property could be sold.

*In re Tome* is not in point with the case at bar inasmuch as the Chapter 13 bankruptcy had not been dismissed in that case, and the property remained property of the estate. It is helpful, however, because it examines in considerable depth the problems which can be created by the public proclamation process in a bankruptcy context. In California, for example, by Judge Bufford's experience, it is not uncommon for foreclosure sales to be postponed twenty, thirty or forty times, solely by announcement of the continuance at the date, time and place previously set for the sale. If the debtor wishes to be advised of the ultimate sale date the debtor must keep track of each continuance date and attend each proceeding either personally or by a representative. By contrast, in the *Roach* case the Court merely acknowledged that the continuances were obtained by publication. Whether the debtor or any other interested

parties received personal notice of the continuance date was not even addressed in the opinion, so I believe it is reasonable to conclude that the debtor in that case was informed of the ultimate sale date.

Furthermore, the publication of notices in the *Roach* case did not require any affirmative action on the part of the debtor. This distinction was emphasized in *Morgan Guaranty Trust Company of New York v. American Savings and Loan Association*, 804 F.2d 1487 (9th Cir.1986) wherein the Court stated at page 1491 "the activities that are specifically prohibited all involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests." In footnote 4 on that same page the Court cited numerous examples of activities that did or did not violate the automatic stay.

4. The case law supports a distinction between communications between the creditor and debtor that contain threats or harassment and those that merely set forth the fact that money is owing. Thus, courts have held the automatic stay violated by letters giving notice of intent to terminate a lease, *Southside Leasing Co. v. Merchants Plaza, Inc. (In re Merchants Plaza, Inc.)*, 35 B.R. 888, 893–94 (Bankr. D.Tenn.1983); *see A. Dan Chisholm, Inc. v. B.P. Oil, Inc., Gulf Products Division (In re A. Dan Chisholm, Inc.)*, 57 B.R. 718, 720 (Bankr.M.D.Fla.1986) (notice of intent to terminate franchise may violate stay); by a letter informing the debtor that a creditor medical clinic would provide no future medical services due to his refusal to pay. *Olson v. McFarland Clinic (In re Olson)* 38 B.R. 515, 517–18 (Bankr. N.D.Iowa 1984), by a letter from an attorney informing the debtor he had been retained by a creditor to collect a delinquent account, *DeLay v. Underwood (In re DeLay)*, 25 B.R. 898, 901 (Bankr.W.D.Mo. 1982) *modified on other grounds*, 48 B.R. 282 (W.D.Mo.1984); by a college that refused to give transcripts to the debtor to force payment, *Parraway v. Andrews University*, 50 B.R. 316, 319 (W.D.Mich.1984) (collecting cases) and by a creditor who made repeated visits and telephone calls to the debtor, *In re Gibson*, 16 B.R. 682, 683–

84 (Bankr.S.D.Ohio 1981). On the other hand, a court has said that a letter from a credit union announcing it would do no further business with the debtor unless the debt was reaffirmed would not have violated the automatic stay if it had been sent to the debtor's attorney, [In re] Brown, 49 B.R. [558] at 561 [ (Bkrtcy.M.D.Pa.1985) ], and we have treated other communications that merely set forth the fact of the debt as amendable proofs of claim not voided by the automatic stay, see [In re] Sambo's Restaurants, 754 F.2d [811] at 816 [ (9th Cir.1985) ]; County of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards, Inc.) 597 F.2d 181, 182–83 (9th Cir. 1979) (per curiam), cert. denied, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980).

The only case I have uncovered which appears to be factually in point with the case at bar is In re Acosta, 181 B.R. 477 (Bkrtcy. D.Ariz.1995). In that case the trustee's sale was orally continued various times during the pendency of a Chapter 13 bankruptcy by public proclamation as provided by Arizona law. The bankruptcy was subsequently dismissed for the reason that the debtors failed to provide the Chapter 13 trustee with proof that their 1993 state income tax return had been filed. The debtors thereafter promptly filed the tax return and moved to reinstate the bankruptcy. A trustee's sale, however, was held in the interim and the beneficiary of the deed of trust received a trustee's deed one day before the motion to reinstate was granted. Judge Mooreman concluded that a debtor emerging from bankruptcy was entitled to actual notice of a pending foreclosure and declared the deed void. He further specifically concluded that the pending motion for reinstatement of the bankruptcy was not material to his decision.

It is the conclusion of this Court that the employment of the public proclamation process, which necessarily requires the attendance of the debtor or the debtor's representative is violative of the automatic stay imposed by 11 U.S.C. § 362.

In foreclosure sales of this nature it is often the case that the credit bid entered by the beneficiary is the only bid entered. In such cases the appropriate remedy is obvious. The deed is declared void and the property is revested in the debtor, as was done by the judges in the cases cited above. This case, however, is complicated by the fact that the Thompsons were the successful bidders at the sale, and further complicated by the fact that they purchased the property with funds which they had borrowed on a short term basis which they had no means to repay. Furthermore the Thompsons were without fault in this transaction. Because of those circumstances the Court, at the conclusion of the evidence, exercised its equitable powers and ordered the property to be resold on the open market with the proceeds, after payment of encumbrances and closing costs, to be applied first to repayment of the Thompson's obligation. The remaining balance is held in trust pending the ultimate outcome of this case.

One of the basic objectives of the Washington Deed of Trust Act is to promote the stability of land titles. Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985). This Court believed, and still believes that an avoidance of the foreclosure sale would have worked an unconscionable injustice upon the Thompsons. The Thompsons did not violate the automatic stay, nor were they in a position to know that it had been violated. They were bona fide purchasers for value. Furthermore, avoidance of the sale would unnecessarily do substantial violence to the foreclosure laws and policies of the State of Washington. RCW 61.24.040(7) provides as follows:

(7) The purchaser shall forthwith pay the price bid and on payment the trustee shall execute to the purchaser its deed; the deed shall recite the facts showing that the sale was conducted in compliance with all of the requirements of this chapter and of the deed of trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value, except that these recitals shall not affect the lien or interest of any person entitled to notice under RCW 61.24.040(1), if the trustee fails to give the required

notice to such person. In such case, the lien or interest of such omitted person shall not be affected by the sale and such omitted person shall be treated as if such person was the holder of the same lien or interest and was omitted as a party defendant in a judicial foreclosure proceeding;

This Court has found and concluded that the deed of trust foreclosure statutes were literally complied with in this case. It is clearly an important objective of the courts, and particularly of a court of the nature of this court, to encourage and promote public attendance and participation at public sales, whether they be of a voluntary or involuntary nature. I therefore declare that the automatic stay is annulled as to the transfer of title to the Thompsons.

I further conclude that the Thompsons are entitled to the remaining sale proceeds but direct that those funds shall continue to be held in trust for a period of ten days after the entry of a judgment herein.

█ I further conclude that the defendants, Washington Mutual and H & L Services, Inc., by using the "public proclamation" alternative of continuing the foreclosure sale, have violated the automatic stay imposed by 11 U.S.C. § 362 and that they are liable to the plaintiff for damages as provided by subsection (h) of that section.

In *In re Bloom,* 875 F.2d 224 (9th Cir. 1989) at 227 the Court adopted the following definition:

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

Because the attention of the parties at the time of trial in this case was focused upon the issue of validity or invalidity of the foreclosure sale, the issue of money damages was not thoroughly explored. I have requested the calendar deputy to schedule a telephonic conference on that issue to determine whether damages can be precisely calculated through the use of stipulations and affidavits or whether further proceedings in open court will be necessary.