**In re ATLAS MACHINE & IRON WORKS, INC., Debtor.**

**Atlas Machine & Iron Works, Inc., Plaintiff,**

v.

**Bethlehem Steel Corporation, Charles McDonnell Radigan, Substitute Trustee, Defendants.**

**Bankruptcy No. 96–16755. Adversary No. 97–1012.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Aug. 3, 1998.

## MEMORANDUM OPINION AND ORDER

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This matter comes before the Court on the Defendants' Joint Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 as incorporated by Federal Rule of Bankruptcy Procedure 7056.

This adversary proceeding was transferred by Judge Bostetter to this Court on April 8, 1998. After consideration of the evidence submitted by the parties in support of and in opposition to this motion and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### Background

Atlas Machine & Iron Works, Inc. ("Atlas") is engaged in the business of fabricating steel bridge components and conducts operations at its facility in Gainesville, Virginia. On October 24, 1980, Bethlehem Steel Corporation ("Bethlehem") and Atlas entered into a Loan Agreement, pursuant to which Bethlehem refinanced Atlas' existing debt to Bethlehem and Mercantile–Safe Deposit & Trust Company through a $5.5 million term loan and a revolving credit loan. To secure this loan, Atlas executed a Deed of Trust and Security Agreement in favor of Bethlehem on October 24, 1980, pursuant to which Bethlehem was granted a security interest in all of Atlas' assets, including the Gainesville property and its machinery and equipment.

In April 1984, Atlas defaulted under the Loan Agreement and acknowledged their inability to pay the outstanding debt of approximately $16 million. On April 20, 1984, Bethlehem and Atlas entered into a Liquidation Agreement, under which Atlas was to liquidate the collateral securing the debt to Bethlehem and turn over the proceeds to Bethlehem, while Bethlehem advanced additional funds, secured by the existing collateral, to permit the completion of work in progress and the completion of a liquidation. This Liquidation Agreement was to remain in effect until an Event of Insecurity, as defined in the Liquidation Agreement, occurred. Bethlehem notified Atlas that such Event of Insecurity had occurred in January 1987 and demanded the turnover of its collateral. Atlas refused to do so and sued Bethlehem in the United States District Court for the Eastern District of Virginia. This matter was settled and the parties agreed that the

amount of the debt owed to Bethlehem by Atlas was $13,556,693.30. This settlement agreement was not consummated and Atlas again filed suit against Bethlehem in which Bethlehem counterclaimed for breach of the settlement agreement. Summary judgement was granted to Bethlehem in the amount of $15,886,704.84. Bethlehem has received no payment from Atlas since 1988 and as of December 1996, Atlas' indebtedness totaled over $18.5 million. Affidavit of Matthew Ruch, ¶¶ 3–10.

In October 1996, Bethlehem instructed Charles McDonnell Radigan ("Radigan"), named Substitute Trustee under the Deed of Trust, to begin foreclosure proceedings. Radigan retained the firm of R.L. Rasmus Auctioneers ("Rasmus"), which was affiliated at that time with the auctioneering firm of Fox and Associates, to conduct the sales and assist in the advertising and publicity. The sale of the Gainesville property was scheduled for December 5, 1996 and the sale of the machinery and equipment was slated for December 17, 1996. These sales were heavily publicized during the fall of 1996 through newspaper advertisements and the dissemination of information to individuals who had expressed an interest in the sales. Radigan stated in his Affidavit filed with this Court that, in addition to his Trustee fees, Bethlehem incurred more than $30,000 in pre-foreclosure advertising expenses.

On the morning of December 5, 1996, Atlas filed a voluntary Chapter 11 petition, in which it continues to operate as a debtor in possession. Radigan appeared at the site of the auction and announced that the sale would not take place because Atlas had filed for bankruptcy and that the sale would be postponed until December 19, 1996 so that Bethlehem could attempt to obtain relief from the automatic stay provision of 11 U.S.C. § 362. Radigan subsequently published legal notice of the postponement in the *Manassas Journal Messenger,* the same newspaper in which he had run prepetition advertisements of the sale. On December 5, 1996, Bethlehem filed a motion for relief from the automatic stay with the United States Bankruptcy Court for the Eastern District of Virginia and a motion to withdraw the reference from the bankruptcy court with the United States District Court for the Eastern District of Virginia. On December 18, 1996, the District Court denied the motion to withdraw the reference. Radigan again postponed the December 19, 1996 real estate auction date to April 10, 1998, which, as stated in his Affidavit, would provide the Bankruptcy Court adequate time to rule on the motion for relief from stay. Radigan again published legal notice of the postponement in the *Manassas Journal Messenger.* In addition, Radigan sent a letter concerning the postponement to those parties who had previously expressed an interest in the sale.[1] According to the Affidavit of Arthur Miles, President of Atlas, those receiving this letter included creditors, customers, and potential customers. In his Answer to the Amended Complaint, Radigan states that the only persons to whom the letter was sent were those who had previously expressed an interest in the auction or who had registered at the pre-foreclosure meeting. Radigan stated that the reason for postponement of the foreclosure sale was to avoid the duplication of pre-foreclosure expenses incurred by Bethlehem and to maintain the pre-filing level of in-

---

1. This letter states, in part:
 Please be advised that because of the bankruptcy filing by Atlas Machine & Iron Works, Inc., it will be necessary to further postpone the foreclosure of the property located at I–66 and Route 29–211. The Court did not grant Bethlehem Steel Corporation's preliminary motion to remove the stay of proceedings against the debtor. In order to allow time to complete the legal approvals necessary to proceed with the foreclosure, it is necessary to postpone the foreclosure of the property until April 10, 1997....The equipment sale will take place on April 17, 1997....You will be given further notice as the time for the sale approaches....
 Exhibit 8 of Amended Complaint.

terest in the sales. Radigan Affidavit, ¶ 5.

Further advertisement of the sale was posted by Rasmus. This is not disputed by the Defendants. Prior to the first rescheduled foreclosure sale of December 19, 1996, a display advertisement ran in the December 16, 1996 edition of the *Washington Post* which announced the date and location of the rescheduled real estate auction. At least one other such advertisement appeared in the January 13, 1997 edition of the *Washington Post*.[2] Further, the sales were advertised on the Fox and Associates' website. Atlas attached a copy of one such advertisement, dated January 7, 1997, to their complaint.[3] Both Radigan and Bethlehem have denied any knowledge of these advertisements and have sworn in their affidavits that they put a stop to this advertising as soon as they became aware of it. Atlas disputed this contention in their responsive pleadings, however, at summary judgment argument, they admitted that this issue was not in dispute.[4]

The Bankruptcy Court denied Bethlehem's Motion for Relief from the Stay. However, on appeal, the District Court reversed and authorized the lifting of the stay. The foreclosure sale of the real estate occurred on January 12, 1998 and the sale of the equipment was held on March 15, 1998.

### Arguments of the Parties

In Count I of its Complaint, Atlas alleges that the Defendants' actions constitute a willful violation of the automatic stay provision of 11 U.S.C. § 362 and requests that the Court issue a permanent injunction which would prohibit the Defendants from contacting Atlas' customers or potential customers, from advertising or promoting a foreclosure sale of Atlas' property, or from any other interference with Atlas' ability to seek and acquire new contracts.[5] Count II of the Complaint seeks to recover actual damages, costs, and attorneys' fees pursuant to 11 U.S.C. § 362(h) and an award of sanctions pursuant to 11 U.S.C. § 105. Count III of Atlas' Complaint alleges that Bethlehem had knowledge of the continued advertising and of the letter to interested parties (via the Ruch Letter, fn 4), and that this constitutes a willful violation of the automatic stay. Because Bethlehem denied any knowledge of this in open court, Atlas further alleges that their

2. The Court is unsure of the exact number of display advertisements run in the *Washington Post* and other similar media outlets. Miles' Affidavit states "Bethlehem and Radigan placed and continued prominent advertisement of the sale of Atlas' real and personal property, including advertisements appearing in the Washington Post as late as January 13, 1997."

3. Arthur Miles stated in his Affidavit that he saw "continued advertisements" on this website. Miles Affidavit, ¶ 13.

4. Count III of Atlas' Complaint alleges that Bethlehem had knowledge of the continued advertising by the auctioneers and of the Radigan Letter to interested parties by reason of a letter written by Radigan to Matthew Ruch [Ruch Letter], Director of Financial Services for Bethlehem, and that this constitutes a willful violation of the automatic stay. The letter to Ruch stated, in part:

It is my inclination to postpone the sale to March 20, 1997 at 11:00 which would give sufficient time for the Bankruptcy Court to conclude a hearing on the merits regarding lifting of the bankruptcy stay. I suggest that I write each "interested party" on the list about the postponement. If this is agreeable with you, I will place another ad in the newspaper to be published on December 26, 1996 regarding the further postponement of the sale. After the Bankruptcy Court has acted, we can then determine whether or not to readvertise and to what extent we will publicize the sale through the efforts of Messrs. Rasmus and Dudley.

This letter was copied to Bethlehem's general counsel and counsel of record in this case. Exhibit 7, Amended Complaint.

5. A Preliminary Injunction, enjoining the Defendants from "taking any further action to advertise or publicize in any way a foreclosure sale" was entered by Judge Bostetter on February 25, 1997. This order was modified on April 8, 1997 to ensure that notice of cancellation of the foreclosure sales, unless and until further notice from the Court, was published in several media outlets.

conduct constitutes sanctionable contempt of Court.

In its Motion for Summary Judgment, the Defendants make two arguments. First, they argue that the postponement of the foreclosure sales was not a violation of the automatic stay since it merely maintained the status quo between the parties. In the alternative, the defendants argue that they should be awarded summary judgment on the plaintiff's § 362(h) claim because Atlas, as a corporation, does not fall under the definition of the term "individual" in that section.

■ In their Response to the Motion for Summary Judgment Atlas claims, in addition to reiterating the allegations asserted in their amended complaint, that the law of the case doctrine ought to preclude this Court from granting summary judgment. Essentially, they argue that since the Motion for Summary Judgment contains the exact same legal arguments that were contained in their previous Motion to Dismiss, which was overruled on April 30, 1997 by Judge Bostetter, law of the case should preclude the defendants from rearguing matters already determined. Additionally, at oral argument, Atlas asserted that, even in this absence of any knowledge of the Rasmus advertising, the Defendants were under an affirmative obligation to correct the alleged violations and failed to so, creating liability under § 362(h).

■ It is well established that the law of the case doctrine is discretionary. *Denton v. Ellis,* 258 F.Supp. 223, 229 (E.D.N.C. 1966); *Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 7 (2d Cir.1996); *Copeland, et al. v. Merrill Lynch & Co., Inc., et al.,* 47 F.3d 1415, 1424 (5th Cir. 1995); *Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 605 (7th Cir.1987) ("[u]nlike the doctrine of stare decisis, however, law of the case is a discretionary doctrine"). The Defendants cite a Fourth Circuit opinion, *Foster v. Tandy Corp.,* 848 F.2d 184 (4th Cir.1987), in which the court rejected the law of the case argument that one judge's denial of summary judgment precluded a subsequent judge from granting judgment notwithstanding the verdict. It has been brought to this Court's attention that *Foster* was mistakenly published in full when it should have been designated a table decision without a published opinion. However, another Fourth Circuit opinion embraces a similar conclusion:

> [W]hether rulings by one district judge become binding as "law of the case" upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not.

*Hill v. BASF Wyandotte Corp.,* 696 F.2d 287, fn. 3 (4th Cir.1982). Furthermore, Judge Bostetter stated at the hearing on the Motion to Dismiss that the defendants would not be precluded from moving for summary judgment after the facts of the case were more fully developed. Hearing Transcript April 30, 1997, p. 24, lines 12–25. Accordingly, this Court declines to apply the discretionary law of the case doctrine in this matter, and as such will consider the two arguments for summary judgment set out by the Defendants.

### Motion for Summary Judgment

In determining whether to grant summary judgment to the Defendants, the Court looks to Rule 56(c) of the Federal Rules of Civil Procedure which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. Fed. R. Bankr.P. 7056. Pursuant to this Rule 56(c), the Court will grant summary judgment if two elements are proven. First, the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The second element is that "the moving party is entitled to a judgment as a matter of law." *Id.* "In considering a motion for summary

judgment, the Court should draw all inferences from the underlying facts in a light most favorable to the nonmoving party." *In re Speaks*, 193 B.R. 436, 440 (Bankr. E.D.Va.1995) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The moving party bears the burden of showing, by a preponderance of the evidence, that there is no genuine issue as to a material fact. *Md. Highways Contractors v. State of Md.*, 933 F.2d 1246, 1252 (4th Cir.1991), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991). A material fact is one which might affect the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries its burden, the nonmoving party must not merely rest upon the pleadings, but must " 'set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The Supreme Court defined a "genuine" dispute over a material fact as one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party is entitled to summary judgment as a matter of law where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " '[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate.' " *Miller v. F.D.I.C.*, 906 F.2d 972, 973–74 (4th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348).

## CONCLUSIONS OF LAW

 "The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions." [6] *In re Roach*, 660 F.2d 1316, 1318 (9th Cir.1981) (citing Notes of Comm. on the Judiciary, Sen. Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in (1978) U.S.Code Cong. & Ad.News 5787, 5840). Section 362(h) of the Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (1998). The standard for determining a willful violation under § 362(h) is not as stringent as the standard for determining contempt pursuant to § 105(a).[7] *Shadduck v. Rodo-*

---

**6.** Section 362(a) prohibits, *inter alia*, the following post-petition acts:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a) (1998).

**7.** Section 105(a) states, in part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Courts have held that this section may be used to remedy violations of the automatic stay. *In re Just Brakes*

*lakis,* 221 B.R. 573, 580–81 (D.Mass.1998) (citing 3 Collier on Bankruptcy § 362.11[3] (15th ed.1998)). Therefore, this Court will initially focus its analysis on whether the alleged conduct here constitutes a willful violation under § 362(h).

■ The Fourth Circuit has determined that to constitute a willful violation under § 362(h), the creditor "need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Maryland v. Strumpf,* 37 F.3d 155, 159 (4th Cir.1994), *rev'd* on other grounds, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). *See Budget Serv. Co. v. Better Homes of Va.,* 804 F.2d 289, 292–93 (4th Cir.1986); *Hanna Coal Co., Inc. v. Internal Revenue Serv.,* 218 B.R. 825, 828–29 (W.D.Va.1997); *Davis v. Internal Revenue Serv.,* 136 B.R. 414, 423 (E.D.Va.1992) ("[t]o constitute a 'willful violation' under 11 U.S.C. § 362(h) the violator must have known of the automatic stay and must have intentionally or deliberately undertaken acts that violated the stay", citing *Budget Serv. Co. v. Better Homes of Va.,* 804 F.2d at 293). Once the plaintiff establishes a willful violation, they must then "sufficiently prove actual dam-

ages and may receive attorney's fees at the discretion of the trial court." *Hanna Coal Co. v. Internal Revenue Serv.,* 218 B.R. at 829.

■ The first question facing this Court is whether the acts undertaken were, in fact, violations of the stay. If the acts constitute stay violations, this Court must determine whether or not there was a "willful violation," as defined by the Fourth Circuit.

### Do the Postponements, Legal Advertisements and Letter to Interested Parties Constitute Violations of the Automatic Stay?

■ The Court's analysis begins with a determination of whether summary judgment ought to be granted in reference to the postponements of the sales, the two legal advertisements placed in the *Manassas Journal Messenger* which postponed the foreclosure sales, and the Radigan Letter, sent to interested parties.[8] The initial question before the Court is whether these acts were a violations of the stay. This Court finds that these specific acts are not violations of the automatic stay because

Corporate Systems, Inc., 108 F.3d 881, 885 (8th Cir.1997) ("§ 362(a), buttressed by § 105(a), confers broad equitable power to remedy adverse effects of automatic stay violations"); *In re A & J Auto Sales, Inc.,* 210 B.R. 667, 670 (Bankr.N.H.1997) (corporate debtor that could not recover under stay provision could recover under § 105(a)); *Jove Eng'g, Inc. v. Internal Revenue Serv.,* 92 F.3d 1539, 1553–54 (11th Cir.1996); *In re Del Mission Ltd.,* 98 F.3d 1147, 1152–53 (9th Cir. 1996) ("[§ 105(a)] is broad enough to provide relief to those entities that are injured by willful violations of the automatic stay, but cannot recover under § 362(h)").

8. There appears to be no genuine issue as to any material fact with regard to these events. The Radigan Affidavit acknowledges that he postponed the sales, placed both legal advertisements of the postponements in the *Manassas Journal Messenger* and sent the letter to interested parties. Radigan Affidavit ¶¶ 6,7. Radigan notified Bethlehem of the second postponement and of the letter to interested parties in his letter to Ruch, dated December 19, 1996. *See* fn. 4, *supra.* (Atlas contends

that this letter also constitutes notice of the additional display advertisements in the *Washington Post* and on the auctioneer's website. The Court will discuss this, *infra.*)

However, Bethlehem denied in open Court that they knew of the continuing advertisements and the letter sent to interested parties. *See* Amended Complaint, Exhibits 5, 6. Because this Court finds that the postponements of the sales, the two legal advertisements placed in the *Manassas Journal Messenger,* and the Radigan Letter are not violations of the automatic stay, Bethlehem's denial of the continuing advertisements (in the *Manassas Journal Messenger*) and the letter sent to interested parties is not a genuine material issue. *See Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505 ("[a]s to materiality, the substantive law will identify which facts are material. . . . [f]actual disputes that are irrelevant or unnecessary will not be counted"). Whether Bethlehem knew of the acts or not is irrelevant since these acts do not constitute a violation of the stay.

they merely preserve the pre-petition status quo.

 The automatic stay, though broad, does not preclude all post-petition creditor activity. *In re Roach*, 660 F.2d at 1319; *see, e.g., Citizens Bank of Maryland v. Strumpf*, 516 U.S. at 21, 116 S.Ct. 286. Actions taken that tend to maintain the status quo are not as likely to be found to violate the automatic stay provision of § 362. *In re Conn. Pizza*, 193 B.R. 217, 228 (Bankr.D.Md.1996). One of the leading cases in which postponement has been found not to violate the automatic stay is *In re Roach*, 660 F.2d at 1318–19. In *Roach*, a Chapter 11 petition was filed the same day the creditor bank had scheduled a public foreclosure sale. *Id.* at 1317. The Debtor contended that the bank violated the stay by publishing successive notices of postponement which specified a new sale date. *Id.* The *Roach* court concluded that such postponement notices are not a violation of the automatic stay, reasoning that the creditor merely "maintained the status quo, and did not harass, interfere or gain any advantage." *Id.* at 1318–19. *See In re Doud*, 30 B.R. 731, 734 (Bankr.W.D.Wash.1983) (finding that the announcement of a postponement of a nonjudicial foreclosure sale pursuant to state law did not violate the automatic stay); *BAM Investments, Inc. v. Roberts*, 172 Ariz. 602, 838 P.2d 1363 (App.1992) (finding that the automatic stay did not preclude the trustee under a deed of trust from giving continual notice of postponement of the foreclosure sale); *In re Barry*, 201 B.R. 820 (C.D.Cal.1996) (the post-confirmation postponement of a foreclosure sale did not violate the automatic stay); *In re Peters*, 101 F.3d 618, 620 (9th Cir.1996) (adopting the reasoning of *In re Barry, supra*); *In re Anderson*, 195 B.R. 87, 90 (9th Cir. BAP 1996).[9]

Courts in other circuits have similarly held that such postponement is not a violation of the automatic stay. In *In re De Jesus Saez*, the First Circuit found that a creditor, after learning of the debtor's Chapter 13 filing, did not violate the automatic stay by rescheduling the foreclosure auction and advertising the new date:

> [This creditor] did, however, petition the bankruptcy court to lift the stay and we have no reason to imagine he would have proceeded with the auction had the chapter 13 petition not been dismissed. . . . Like the creditor in Roach, [this creditor] did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal. It was not shown that these preparatory acts either harassed [the debtor] or revived "the financial pressures that drove [her] into bankruptcy."

721 F.2d 848, 853 (1st Cir.1983) (citations omitted).[10] *See In re Tellier*, 146 B.R. 598, 606 (Bankr.D.R.I.1992); *In re Barnes*, 119 B.R. 552, 556 (S.D.Ohio 1989) (taking steps to reschedule and advertise a sheriff's sale

**9.** The debtor contends that the breadth and continuing validity of *Roach* have been called into question. It cites the case of *In re Fritz*, 188 B.R. 438 (Bankr.E.D.Wash.1995), which questioned whether the *Roach* logic would be expanded to circumstances where a foreclosure sale was continued by public proclamation and required the presence of the debtor or his representative. The *Fritz* court found this to be a violation of the automatic stay. However, it seemed to be most concerned that under state statute, the debtor would have no *notice* of the rescheduled hearing unless he attended "the sale at the time and place originally scheduled, and each continuation date thereafter. . . ." *Id.* at 440–41. This Court does not find such a fact driven criti-

cism of *Roach* sufficient to overcome its continuing validity.

**10.** Atlas refers this court to the case of *Soares v. Brockton Credit Union*, 107 F.3d 969 (1st Cir.1997) and contends that it calls into question the validity of *In re De Jesus Saez*. However, *Soares* is distinguishable on its facts. In that case, a state court issued post-petition a default judgment and an order for judgment in a mortgagee's pre-petition foreclosure action. The *Soares* court, in strictly interpreting the automatic stay provision, found this to be an a stay violation. This certainly was an act in furtherance of collecting a debt, rather than maintaining the prepetition status quo.

of property did not violate the automatic stay); *In re Taylor*, 207 B.R. 995, 999–1000 (Bankr.W.D.Pa.1997) (finding that the oral postponement and rescheduling of a sheriff's sale was not a violation of the automatic stay and that the continuance merely maintained the status quo pending further proceedings; "[s]uch continuances often occur in bankruptcy cases but the rescheduled sales do not take place unless and until relief from stay is granted").

In *Zeoli v. RIHT Mortgage Corp.*, 148 B.R. 698 (D.N.H.1993), a fact pattern similar to the case *sub judice*, the debtor filed for bankruptcy two days before the scheduled foreclosure sale of her residence. The creditor postponed the foreclosure sale and sent notice of postponement to all parties who had received notice of the original sale. *Id.* at 698–99. The district court noted that the prevailing view is that such action is not a violation of the automatic stay, as was alleged by the debtor. *Id.* at 700. The *Zeoli* court noted that the primary purpose of the automatic stay is to "stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors...." *Id.* The court, following the reasoning of *Roach*, held that postponing the date of a foreclosure sale maintains the status quo between debtor and creditor at the time of filing:

> The postponement of a foreclosure sale is certainly an "act." But, it is not an act in "continuation" of a proceeding "against the debtor" prohibited by § 362(a)(1). Rather, it is more appropriately characterized as an act in preservation of a stayed proceeding. The arrow of time, immune to the Bankruptcy Code's automatic stay provisions, is the critical variable in this case. Time does not stand still for legal processes. Here, its passage, combined with [the creditor's] "act of not acting" to postpone the sale, would have entirely expunged the stayed foreclosure proceeding, thereby disrupting the status quo to the economic detriment of [the creditor],

while conferring no discernable benefit on the debtor.

*Id.* at 701. The court further noted that:

> Duplicated foreclosure costs rarely, if ever, inure to the benefit of the debtor. If there is equity in the property those duplicative costs will ordinarily be deducted from the sale proceeds, funds which otherwise would be applied for the debtor's benefit. In the event there is no equity in the property, those duplicative costs at best unfairly reduce the recovery to which the secured creditor is legitimately entitled.

*Id.*

A court within the Fourth Circuit has recently ruled on this issue of postponement. *First Union Nat'l Bank v. Clayton*, 1998 U.S. Dist. LEXIS 4108 (M.D.N.C. Jan. 16, 1998). In this case, a debtor filed a Chapter 7 petition one day before the scheduled foreclosure sale. *Id.* at *3. The creditor filed a notice of postponement with the county clerk. *Id.* The bankruptcy court found this act to be a continuation of a legal proceeding against the debtor and hence, a violation of the automatic stay. In reversing the bankruptcy court, the district court, citing *Roach, inter alia*, noted that postponement of a previously scheduled foreclosure sale merely maintains the status quo and "'did not harass, interfere or gain any advantage.'" *Id.* at *7 (citing *Bam Investments, Inc. v. Roberts*, 838 P.2d at 1365). In so ruling the court reasoned:

> There is no question that actually conducting the sale on a date in the future would be a violation of the automatic stay. However, this Court finds that the postponement of the sale in this instance was a defensive or responsive action taken by [the creditor].... Because of the automatic stay associated with [the debtor's] new Chapter 7 petition, filed only one day before the previously scheduled foreclosure sale, the only appropriate action for [the creditor] to take was to postpone the sale....[The creditor's] action in this

regard cannot be viewed as an effort to harass [the debtor] or to gain any advantage by postponing the foreclosure sale . . . .

*Id.* at \*7–\*8.

Atlas cites several cases for the proposition that advertising a foreclosure sale post-petition is precluded by the automatic stay. In *In re Franklin Mortg. & Inv. Co., Inc.,* 143 B.R. 295 (Bankr.D.C.1992), the creditor's attorney acted post-petition, with knowledge of the automatic stay, sending the clerk of the circuit court a notice of sale and directing the clerk to publish notice of the sale in a local newspaper. *Id.* at 303. The court found this to be a willful violation of § 362. *Id.* However, this Court notes that *Franklin* can be distinguished from those cases cited by the Defendants, *supra.* In *Franklin,* the sale date was set post-petition. *Id.* at 298. No pre-petition advertising had yet taken place in this case. Therefore, the creditor was not merely maintaining the status quo by directing the post-petition advertising, but acting in furtherance to enforce a lien against property of the estate. *See In re Ring,* 178 B.R. 570, 574 (Bankr.S.D.Ga. 1995) (creditor began advertising foreclosure sale *post-petition* in violation of the automatic stay); *In re Demp,* 23 B.R. 239 (Bankr.E.D.Pa.1982) (creditor and his counsel were held in contempt for violating the automatic stay provision where they, *post-petition,* posted the debtor's property for sale).

Atlas further argues that the Radigan letter was a violation of the automatic stay. They cite the case of *Divane v. A & C Electric Co., Inc.,* 193 B.R. 856 (N.D.Ill.1996). In this case, the trustee of a union employee benefits plan sent a letter to the debtor's employees informing them that the debtor's delinquencies in health and welfare benefits contributions could cause the suspension of coverage. *Id.* at 856–58. The bankruptcy court reasoned that suspension of the benefits would discourage those workers from working for the debtor, and that the possi-

bility of losing its employees was powerful pressure on the debtor to pay the debt. *Id.* at 858. In affirming the bankruptcy court, the district court found that any action taken which amounts to pressure on the debtor to pay a pre-petition debt is a stay violation. *Id.* at 859.

> "[C]ommunications from the creditor to third parties can fall within the scope of Section 362(a)(6) so long as the communications are factually deemed to be an 'act to collect'—that is, if they are done with the intent to collect the debt and if they have the effect of coercing or harassing the debtor . . . ."

*Id.* at 859–60. *In re Olson,* 38 B.R. 515 (Bankr.N.D.Iowa 1984) (finding that a creditor who sent a letter to debtors advising them that they would not provide medical care unless they paid a pre-petition debt for medical services rendered was an act to collect a claim in violation of the automatic stay). However, in the case *sub judice,* this Court finds that Atlas has presented no evidence that the Radigan letter was an act in furtherance of collecting the debt. It appears to this Court that the letter merely maintained the status quo. Radigan contacted only those who had an expressed a interest in the original sale to inform them of the postponement and rescheduled dates. Contrary to the cases cited by Atlas, this Court can find no evidence in the record before it of any intent on the part of the Defendants to collect the debt or coerce or harass the debtor by the issuance of this letter.

This Court agrees with the Defendants and finds that, as the majority of courts in similar scenarios have ruled, that the postponements of the foreclosure sales, the legal notices accompanying them, and the letter to interested parties were actions taken to maintain the status quo and are not violations of the automatic stay. Accordingly, there is no need to address whether the Defendants acted willfully. The postponement, the legal notices and the letter to interested parties were not acts in continuation of a proceeding

against the debtor. There is no question that if the Defendants had gone forward with the sale, they would have been in violation of the automatic stay. However, like the court in *First Union Nat'l Bank v. Clayton*, this Court finds that the postponement etc., was a "defensive or responsive action" taken by the Defendants to preserve the pre-petition status quo. Since no genuine issue as to a material fact exists and the Defendants are entitled to judgment as a matter of law, this Court awards summary judgment in favor of the Defendants as to the Defendants' actions of postponing the foreclosure sales, advertising them through legal notice in the *Manassas Journal Messenger*, and sending the letter to interested parties.

### *Washington Post* and Internet Advertising

 The Defendants by Affidavit have affirmed under oath that they did not have prior knowledge of the advertising in the *Washington Post* and on the Internet ("Rasmus Advertising") and had not authorized it. Further, they affirm that once they became aware of such advertising, they put an end to it. Counsel for Atlas stated to the Court, in summary judgment argument, that there is no factual issue in dispute as to whether the defendants had knowledge of the Rasmus Advertising and could offer no evidence to contradict the affirmation of the Defendants that they had no knowledge of the Rasmus Advertising.[11] As discussed *supra*, the Fourth Circuit has determined that the standard for a willful violation of § 362 is an intentional act done with knowledge of the stay. No specific intent is necessary. Since it is undisputed that both Defendants had knowledge of the Bankruptcy, the remaining issue is whether summary judgment should be granted as to whether the Defendants committed an *intentional act* with knowledge of the automatic stay. This presents the issue of whether a party, who has no knowledge of third party acts in possible violation of the stay, can be held to have violated the stay. Atlas argues that, under agency theory, the Defendants can be found to have willfully violated the stay, even though they had no actual knowledge of the auctioneers' display advertisements in the *Washington Post* and on their website.

 An agency relationship arises by agreement or consent of the parties that one shall act as agent for another. *Eitel v. Schmidlapp*, 459 F.2d 609, 614 (4th Cir.1972). It is the intent of the parties, found from all the facts and circumstances of a particular case, that determines whether an agency relationship exists. *Id.* In this case, Radigan stated that he retained Rasmus to "conduct the sales and to assist in the preparation and publication of

---

11. The Court has considered the import of the Ruch Letter (fn. 4, *supra*), wherein Radigan suggested to Ruch that he write to parties who had expressed interest in the sale and "place another ad in the newspaper to be published on December 26, 1996 regarding the further postponement of the sale." Amended Complaint, Exhibit 7. In Count III of the Amended Complaint, Atlas alleges that Radigan suggested in the Ruch Letter that he place additional *advertisements*. This Court notes that the actual letter referred to placing only *one* advertisement. On the record before it, this Court has no way of knowing whether the advertisement referred to was one of the legal notices published in the *Manassas Journal Messenger*, which this Court has held not to be a violation of the stay, *supra*, or one of the display advertisements published in the *Washington Post* or the auctioneers' website.

In the face of Atlas' admission that there is no factual dispute, this Court finds that the statement in the Ruch Letter presents no more than a mere scintilla of evidence that the Defendants had knowledge of these advertisements and that Atlas has not set out sufficient facts to demonstrate a genuine issue of material fact as to this knowledge. The nonmoving party must do more than present a "scintilla" of evidence in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgement may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

regional advertising and direct mail publicity of the sales." Radigan Affidavit, ¶ 4. Therefore, this Court finds that Rasmus was retained as an agent for the trustee under the deed of trust. Under Virginia law, a trustee under a deed of trust, though he owes a fiduciary duty to both the debtor and the creditor, is an agent for neither party. *See Catlett v. Hawthorne*, 157 Va. 372, 377–78, 161 S.E. 47 (1931) (finding that a trustee is not an agent since he has no principal). Therefore, Radigan was not acting as an agent for Bethlehem.

The Court has found one case on point in which the bankruptcy court refused to impose liability on a creditor who did not direct her attorney to take actions to collect a debt in violation of the stay. *In re Rhyne*, 59 B.R. 276, 279 (Bankr.E.D.Pa. 1986) ("[a]s to [the attorney's] client, [ ], there is no evidence of record indicating that she directed [him] to take his contemptuous course or that she even knew of it").

The Court has found few cases in which a principal has been held to have violated the automatic stay based on acts of his agent.[12] *In re Sechuan City*, 96 B.R. 37 (Bankr.E.D.Pa.1989). The *Sechuan City* court found that the principal was liable for the acts of his employee in violation of the automatic stay. However, this Court notes that in *In re Sechuan City*, the principal directed the acts of the employee. Thus, unlike the case *sub judice*, there was no question of whether the principal committed an intentional act. He merely committed the intentional act through his employee.

In *In re Sumpter*, 171 B.R. 835, 843 (Bankr.N.D.Ill.1994), the court, relying in part on agency law, found that off-duty employees' acts of removing debtor's personalty in violation of the stay were attrib-

utable to the creditor. In this case, the *Sumpter* court relied on the agency principal of ratification that "a principal will generally ratify the acts of an agent when he has full knowledge of all the material facts and takes some action to affirm the agent's actions." *Id.* In *Sumpter*, the court held that since the creditor paid for the services, they ratified the acts of the agents. *Id.* Unlike the case before this Court, it is apparent that the principals in *Sumpter* had some notice of the acts undertaken by agents since they paid for their services.

In *In re Fowler*, 16 B.R. 596 (Bankr. S.D.Ohio 1981), the bankruptcy court held that a creditor was technically in violation of the automatic stay because a collection agency undertook collection efforts against the debtor on behalf of the creditor. In finding that the facts did not establish an intentional violation of the automatic stay, the court stated:

> The contemptuous conduct of [the creditor], then, can only be viewed as unintentional. Superimposed upon that finding, however, is that the principals of agency law dictate that, as between a principal and a third party dealing with an agent of that principal, a third party should and must be able to rely upon the acts of the agent which are performed with either actual or apparent authority. The principal in this case, [ ], vested its agents . . . with authority to make collection efforts on its behalf. [The creditor] voluntarily chose its agents, and thus must bear some responsibility of its agent's actions in this case.

*Id.* at 597.

This Court disagrees with the outcome of *In re Fowler* in its application of agency law to the automatic stay provision. This Court is mindful of Supreme Court and

---

**12.** The Court has found cases in which knowledge of the bankruptcy petition has been imputed to a creditor. *In re Carpio*, 213 B.R. 744 (Bankr.W.D.Mo.1997) (Though creditor had no actual knowledge of debtor's bankruptcy filing, her attorney's actual knowledge

can be imputed to her); *In re Adams*, 86 B.R. 867 (Bankr.E.D.N.C.1988). However, the issue of knowledge is not before this Court since both Defendants have admitted that they had actual knowledge of Atlas' filing.

Fourth Circuit rulings which admonish courts to withhold from creating a federal common law unless there is a " 'significant conflict between some federal policy or interest and the use of state law.' " *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (citing *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966)). *See Atherton v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997); *Fed. Fin. Co. v. Hall*, 108 F.3d 46, 49 (4th Cir.1997); *United States v. Sheek*, 990 F.2d 150, 153 (4th Cir.1993) ("[h]aving determined that the [federal] statute is unambiguous...there is no basis for this Court to create such federal common law"). This Court declines to superimpose Virginia agency law onto § 362(h) of the Bankruptcy Code in the case *sub judice*. To do so would create a federal common law rule when there is no "significant conflict" to warrant such creation. The federal statute is unambiguous that a "willful violation" must exist and the Fourth Circuit has clearly defined this as an intentional act with knowledge of the bankruptcy petition. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242–43, 109 S.Ct. 1026, 103 L.Ed.2d 290 ("[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' " (citation omitted)). Much like the Court in *In re Rhyne*, this Court cannot find that, in absence of any knowledge of the advertising done by the auctioneers, the Defendants acted intentionally for purposes of finding a willful violation.

Furthermore, the assertions of Atlas that the Defendants' failure to correct the alleged stay violations by reason of the Rasmus Advertising exposes them to liability under § 362(h) must also fail factually in the face of the inability of Atlas to refute the sworn affirmation of the Defendants that they stopped the advertisements upon obtaining actual knowledge of their existence. Regardless of what duties may be imposed by law to terminate alleged stay violations of a third party agent, it is factually undisputed that the Defendants caused the cessation of the Rasmus Advertising upon learning of same. Therefore, the Defendants are entitled to summary judgment as a matter of law.

Since no genuine issue as to a material fact exists and the Defendants are entitled to judgment as a matter of law, this Court awards full summary judgment in favor of the Defendants. As an alternative ground for the entry of summary judgment in favor of the Defendants, they argue that a corporation may not seek relief under § 362(h). While the Court, by necessity, need not reach this issue based upon its ruling *supra*, *Budget Serv. Co. v. Better Homes of Va.*, 804 F.2d at 292, where the Fourth Circuit Court of Appeals permitted assertion of a stay violation under § 362(h), appears to remain the controlling law in this Circuit.

█ Accordingly, the Court need not rule on the issue of whether the Rasmus Advertising was done in violation of the automatic stay. The Court merely notes that non-creditors may be held accountable for violations of § 362. *See, e.g., In re Colon*, 102 B.R. 421, 429, fn. 12 (Bankr. E.D.Pa.1989); *In re Lee*, 35 B.R. 452, 455–56 (Bankr.N.D.Ga.1983). Furthermore, the Court need not address Atlas' request for an award of sanctions pursuant to § 105(a). Since Atlas has not carried its burden under § 362(h), this Court finds that it likewise, has failed to set forth any evidence of an automatic stay violation, for which a court could award sanctions pursuant to § 105(a).

### Conclusion

In summary, this Court GRANTS the Defendants' Joint Motion for Summary Judgment. The Clerk shall forward copies of this Memorandum Opinion and Order to counsel for Bethlehem, counsel for Charles Radigan, and counsel for Atlas.